STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, Plaintiff-Appellant,

v.

UNIVERSAL UNDERWRITERS INSURANCE COMPANY, a corporation, and Bonnie Swanson, and Tammy Wyatt, and John A. Wyatt, Defendants-Respondents.

No. 40187.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 5, 1980.

Kortenhof & Ely, Robert L. Nussbaumer, St. Louis, for plaintiff-appellant.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown by Parks G. Carpenter, St. Louis, for defendant-respondent, Universal Underwriters Ins. Co.

Stefan Glynias, Clayton, for Bonnie Swanson.

SATZ, Judge.

This was a court-tried case. The pertinent facts are not in dispute.

Tammy Wyatt was operating a 1971 Plymouth Fury automobile owned by Chrysler Plymouth West, Inc., a dealership and repair shop, when she was involved in an accident with Bonnie Swanson. The Plymouth Fury automobile was a tempo-rary substitute automobile loaned to Tammy's father, John A. Wyatt, to use while Chrysler Plymouth West, Inc., repaired his automobile, a 1971 Valiant Duster. John A. Wyatt was insured by State Farm Mutual Automobile Insurance Company (State Farm) and Chrysler Plymouth West, Inc., was insured by Universal Underwriters Insurance Company (Universal) under a garage liability policy. Absent any exclusionary clause disclaiming liability, Tammy Wyatt was a person insured under State Farm's policy, as a "relative" of John A. Wyatt, and she also was a person insured under Universal's policy, as a "permitted user" of the Fury automobile.[1]

Bonnie Swanson made a claim for personal injuries against Tammy Wyatt. Universal refused to defend Tammy, contending that State Farm covered the loss in question. State Farm disagreed, filed a declaratory judgment action against Universal, seeking, among other relief, a declaration by the trial court that Universal's policy afforded coverage for Tammy and that State Farm's policy did not apply.[2] The trial court found that State Farm's policy provided coverage for Tammy and that Universal's policy provided no coverage. Understandably on appeal, both parties make the same arguments and take the same positions they took before the trial court. However, having reviewed the entire record, we do not agree with either party, and we conclude that the terms of their respective policies require State Farm and Universal to share responsibility for the loss incurred by Tammy on a pro rata basis.

State Farm and Universal each disclaim liability on the ground that its policy provides no coverage because "other insurance" was available to cover the loss in question. Thus, the present case raises the perennial issue in which a particular loss may be covered by more than one insurance

---

1. Universal does not concede that Tammy was a "permitted user" under the terms of its policy. However, the facts which support this conclusion are clear and unassailable.

2. For procedural reasons not relevant here, Bonnie Swanson, Tammy Wyatt and John A. Wyatt were joined as defendants.

policy and, arguing against double coverage, each insurer disclaims liability on the ground that "other insurance" is available to cover the loss. For our purposes here, we divide these "other insurance" provisions into three general categories: "(1) *pro rata clauses* (which) provide that the insurer will pay its pro rata share of the loss, usually in proportion which the limits of its policy bears to the aggregate limits of all valid and collectable insurance; (2) *excess clauses* (which) provide that the insurer's liability shall be only the amount by which the loss exceeds the coverage of all other valid and collectable insurance, up to the limits of the excess policy; and (3) *escape clauses* (which) provide that the policy affords no coverage at all when there is other valid and collectable insurance". *Concurrent Coverage in Automobile Liability Insurance*, 65 Colum.L.Rev. 319, 321–322 (1965); *see, e. g., Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 444 S.W.2d 583, 586 (Tex.1969).

Initially, in the instant case, we have two policies which appear to contain overlapping "escape clauses". The State Farm policy, after defining those persons who are insured and providing for their coverage, contains an "escape clause" which provides:

"All of the foregoing provisions and all coverages are subject to the following:

. . . (b) The insurance with respect to

(i) a temporary substitute automobile,

(ii) a trailer, or

(iii) a non-owned automobile shall be excess coverage over other insurance; however, NO COVERAGE SHALL APPLY TO ANY LIABILITY OR LOSS IF THE VEHICLE IS OWNED BY ANY PERSON OR ORGANIZATION ENGAGED IN THE AUTOMOBILE BUSINESS AND IF THE INSURED OR OWNER HAS OTHER INSURANCE APPLICABLE IN WHOLE OR IN PART TO SUCH LIABILITY OR LESS."[3]

The pertinent provisions of the "escape clause" relied on by Universal provide:

"IV. Persons Insured

Each of the following is an INSURED under this insurance to the extent set forth below:

Under the GARAGE BODILY INJURY and PROPERTY DAMAGE Liability Coverages:

(1) . . . .

(2) . . . .

(3) with respect to the AUTOMOBILE HAZARD;

(a) . . .

(b) any other person while actually using an AUTOMOBILE covered by this Coverage part with the permission of the NAMED INSURED, provided that such other person (a) has no automobile liability insurance policy of his (her) own, either primary or excess, or (b) is not included in 'Persons Insured' or 'Definition of INSURED' in any other insurance policy, either primary or excess. Insurance afforded by this subparagraph (c) shall not exceed the minimum limit of liability specified in the Financial Responsibility Law of the state in which the accident occurs. However, if such person has another policy available but said other policy has limits of liability less than the minimum limits specified in the Financial Responsibility Law of the state in which the accident occurs, then the policy to which this Coverage Part is attached shall apply only as excess insurance for the difference between said minimum limits and the limits under said other policy."

We must determine whether these clauses conflict or can be harmonized. In doing so, we are aware that insurance is a matter of contract and, as with other consensual undertakings, it must be given effect according to the plain terms of the

---

3. The use of capitalization is reproduced exactly as it appears in the policies in question.

agreement, *Transport Indem. Co. v. Teter*, 575 S.W.2d 780, 784[1] (Mo.App.1978), consonant with the reasonable expectations, objectives and the intent of the parties. *Reliance Ins. Co of Pa. v. Community Fed. Savings & Loan Assn.*, 440 S.W.2d 929, 931[2] (Mo.1969); *Kay v. Metropolitan Life Ins. Co.*, 548 S.W.2d 629, 631[1] (Mo.App. 1977). If the intention of the parties can be determined by an interpretation of the language used in the policy definitions and the policy itself, the court is bound by that intention, *Swaringin v. Allstate Ins. Co.*, 399 S.W.2d 131, 133[2] (Mo.App.1966), and the court cannot create an ambiguity in order to distort the language of an unambiguous policy, or, in order to enforce a particular construction which it might feel is applicable. *M.F.A. Mut. Ins. Co. v. Dunlap*, 525 S.W.2d 766, 769[7] (Mo.App.1975). We view the present record in the light of these principles.

There is no dispute here that Tammy was driving a "temporary substitute automobile" and, thus, under the terms of its "escape clause", State Farm escapes liability if (1) this automobile is owned by an organization engaged in the automobile business and (2) the owner has insurance covering the loss. Universal argues here, as it did to the trial court, that, because of the terms of its "escape clause", it does not provide insurance coverage for the loss in question, which means the second condition of State Farm's "escape clause" is not met and, thus, State Farm's "escape clause" is inapplicable. More specifically, Universal argues that if Tammy were an insured under its policy, as a permitted user of an automobile owned by its named insured, she would be afforded coverage under its policy if, but only if, she were "not included in 'Persons Insured' or 'Definition of INSURED' in any other insurance policy, either primary or excess". Then, turning to the State Farm policy, Universal limits itself to the Definition Section of that policy and finds that Tammy is included in the " 'Definition of INSURED' " because the Definition Section of the State Farm policy provides that

Tammy is an insured as a "relative" of John A. Wyatt, State Farm's named insured. Since Tammy is included with the " 'Definition of INSURED' in (another) insurance policy", Universal reasons, she is not an insured under its policy and, thus, its policy provides her no coverage for the loss in question. This means State Farm cannot escape liability because the second condition of State Farm's "escape clause", requiring other insurance covering the loss in question, is not met.

We reject Universal's narrow and restrictive interpretation of the provisions of its "escape clause". To reach its conclusion that its "escape clause" excludes Tammy Wyatt from coverage under its policy, Universal limits itself to a single phrase in its policy and interprets that phrase completely out of context. Thus, in interpreting its "escape clause", Universal limits itself to the single phrase—" 'Definition of INSURED' in any other policy" and, then, focuses its attention solely on the definition section of the other insurance policy, here, the State Farm policy. Finding that Tammy Wyatt is defined as an insured in the definition section of State Farm's policy, Universal argues this finding excludes Tammy from being an insured under Universal's policy, regardless and without consideration of whether State Farm's policy provided Tammy with valid and collectable coverage for the loss in question. To develop this interpretation, Universal rips its "escape clause" completely out of context, and, then, considering this clause in pristine, literal isolation, Universal discovers a meaning inconsistent with the meaning this clause would have if it were considered in context.

The clause in question, if completed, reads: " 'Definition of INSURED' in any other insurance policy, *either primary or excess* " (emphasis added) and, in its interpretation, Universal conveniently omits the qualifying phrase, *"either primary or excess"*. However, this phrase cannot be forgotten and must have meaning. When left

in context, the phrase *"primary or excess"* qualifies " 'Definition of INSURED' " and necessarily requires the determination of who is included within the definition of an insured to rest not only on whether a person falls within the definition section of an insured in another policy, but also to rest on whether there is coverage—primary or excess—for the person who may fall within that definition section.

More important, perhaps, to a proper interpretation of Universal's "escape clause", are the two sentences which immediately follow that clause. As previously quoted, the first of these latter two sentences reads: "Insurance afforded by this subparagraph (c) shall not exceed the minimal limits of liability specified in the Financial Responsibility Law of the state in which the accident occurs." Arguably, this sentence can be interpreted consistent with Universal's method of interpreting the immediately preceding "escape clause", without rendering the meaning of the sentence insensible. Thus, applying Universal's method of interpretation to this sentence, a person who does not come within the definition section of another policy remains an insured under Universal's policy and Universal provides coverage for that person up to the limits of the local Financial Responsibility Law. However, applying Universal's method of interpretation to the next sentence renders that sentence unintelligible. As previously quoted this sentence reads: "However, if such person has another policy available but said other policy has limits of liability less than the minimum limits specified in the Financial Responsibility Law of the state in which the accident occurs, then the policy to which this Coverage Part is attached shall apply only as excess insurance for the difference between said minimum limits and the limits under said policy." Obviously, the phrase "if [a] person has another policy available" means if a person has other coverage available, and, thus, the sentence simply means that if a person has coverage available under another policy, with limits less than the limits

required by the local Financial Responsibility Law, Universal covers the difference between the two limits. However, in order for a person to have coverage available under another policy, he must first meet the requisite definition of an insured under the terms of that policy. But, under Universal's method of interpretation, if a person falls within the definition of an insured in another policy, Universal would provide no coverage at all, and, thus, there would be no reason to determine whether there is a difference between the minimal limits provided in the other policy and the limits required by the local Financial Responsibility Law. Universal cannot have it both ways. It cannot rationally maintain, on the one hand, that its policy provides no coverage at all for a person who falls within the definition of an insured in another policy and, on the other hand, maintain that its policy does provide coverage to that same person if the other policy has coverage limits less than the limits required by the local Financial Responsibility Law. However, if Universal's "escape clause" is interpreted as requiring a determination of not only whether the person in question is defined as an insured under another policy, but also whether that person, if so defined, has coverage under that policy, then this last sentence takes on an obvious sensible meaning. It merely reflects an intent to limit Universal's coverage to the difference between the other policy limits and the limits required by the local Financial Responsibility Law, if that difference exists. Thus, when Universal's "escape clause" is considered in it proper context, its meaning and intent is clear. Rather than providing Universal an escape from liability, as Universal contends, simply because the person in question is defined as an insured in the definition section of another policy, Universal's "escape clause", like State Farm's "escape clause", provides an escape from liability if that person has other valid and collectable insurance covering the loss in question.

■ Using this interpretation of Universal's "escape clause", no extended disserta-

tion is needed to demonstrate that it is in direct conflict with State Farm's "escape clause". Admittedly, the specific language of the two clauses is dissimilar. However, that is not significant. The two clauses are indistinguishable in meaning and intent, and their purposes are identical: each seeks to provide complete escape from liability. Moreover, their language makes them so interdependent, that neither "escape clause" can be sensibly construed to determine whether either policy provides coverage.[4] Thus, we cannot rationally choose between the two escape clauses. We hold them to be mutually repugnant and we disregard them. *National Indem. Co. v. Liberty Mut. Ins. Co.*, 513 S.W.2d 461, 470[6] (Mo.1974); *Arditi v. Massachusetts Bonding & Ins. Co.*, 315 S.W.2d 736, 743[6] (Mo.1958).

Universal also contends that our state regulations, 4 CSR 190–17, issued by the Superintendent of Insurance pursuant to § 374.045, RSMo 1978, require the interpretation urged by Universal and compel the conclusion it reaches. These regulations set out the minimum standards for automobile insurance policies and, in particular, require

that all private passenger automobile policies include, within the "definition of insured", any person using an owned automobile with the expressed or implied permission of the named insured, that no driver or operator exclusion is acceptable "other than as to the named person" and that all policy forms issued shall be deemed to comply with provisions of the regulations.[5]

Universal properly contends that, under other provisions of State Farm's policy, the temporary substitute automobile in question was an "owned" automobile, and, since Tammy was driving an owned automobile with the express permission of her father, the regulations required her to be included in the definition of an insured within State Farm's policy. We would not disagree with this portion of Universal's argument. However, from this, Universal concludes that the regulations "[announce] to the public including the Wyatts and to State Farm and to Universal" that Missouri law requires Tammy to be covered by State Farm in this case, and, in effect, provide the basis for Universal to conclude there "is other valid and collectable insurance" when writing its policy and setting its rates. We do not agree with Universal's latter argument.

4. For example, if State Farm's "escape clause" is considered first, we find that Tammy, driving a temporary substitute automobile owned by an organization engaged in the automobile business, would not be covered, if, but only if, the owner, Universal's insured, has coverage for the loss incurred by Tammy. To determine whether Universal provides coverage to cover this loss, we turn to Universal's policy and we find Tammy, as a permittee of Universal's named insured, would be provided coverage, if, but only if, she is not included within State Farm's definition of an insured, either excess or primary. To make this latter determination would require reference to State Farm's policy again to determine her coverage, and this, in turn, would require reference to State Farm's escape provision, which would necessitate the same circular reference and considerations without a definitive answer. If Universal's policy is considered first, the same circuity of reference and reasoning results, again without any determination of coverage.

5. 4 CSR 190–17 provides:
   "(1) . . . .
   (2) Minimum automobile policy standards

(A) No private passenger automobile policy which conflicts with any of the criteria set forth in this regulation may be issued to a Missouri insured.
(B) Definition of the insured shall, as to an owned automobile:
   1. . . .
   2. include any person using or any organization responsible for the use of the automobile with the express or implied permission of the named insured or spouse.

(4) Restrictive endorsements
   (A) No driver or operator exclusion is acceptable for use on the private passenger auto policy other than as to the named person. Such endorsements shall include a provision for the signature of the named insured accepting and acknowledging the restriction in coverage.
   (B) . . . .
(5) . . . . All policy forms subject to this regulation shall be deemed to comply with the provisions thereof on that date. . . .".

■ The noted regulations simply mean what they clearly state: a private passenger automobile policy, such as State Farm's policy, must include within the class of insureds those persons using the automobile with the expressed or implied permission of the named insured; stated otherwise, the insurance policy must include a permitted user within the definition of an insured. Admittedly, the regulations do provide that "no driver or operator exclusion is acceptable for use on the . . . . policy other than as to the named persons". 4 CSR 190–17(2)(B)(4). Sensibly construed, this regulation applies to a person whom the insurer might want to exclude from any and all coverage because of his or her personal habits or characteristics and, to do so, this regulation requires the insurer to explicitly inform the named insured of the person so excluded by specifically naming that person in the policy. This regulation does not apply to an exclusion based upon a particular kind or type of loss in question nor, as Universal's interpretation necessarily implies, does it invalidate all escape and excess clauses from private passenger automobile policies. We find Universal's interpretation of the regulations strained and unacceptable.

Our refusal to enforce the escape clauses of each of these policies causes us to examine the remaining provisions of the policies which may possibly be enforced. Both policies include excess clauses as well as the noted escape clauses. The Universal policy provides:

"All coverage provided by this Coverage Part [garage liability] is excess insurance over any other valid or collectible insurance."

As previously noted, the State Farm provides coverage for Tammy, as a driver of a temporary substitute automobile, but the coverage "shall be excess coverage over other insurance".

■ Again, it is quite apparent that, although expressed in different ways, the meaning and intent of these "excess claus-es" is the same; i. e., if there exists other insurance covering the loss, the insurer will only provide excess coverage over the limits of the other policy. In dealing with this no less complex problem of apparently conflicting excess clauses, the courts have fashioned a number of different ad hoc and, at times, conflicting rules and methods of interpretation in an attempt to give proper effect to both policies. *See Concurrent Coverage in Automobile Liability Insurance, supra.* For example, in Missouri, where standard private passenger automobile liability policies have conflicting excess clauses as to non-owned automobiles, the insurer of the owner of the automobile rather than the insurer of the operator is held to provide primary coverage. *See, e. g., United States Fidelity & Guaranty Co. v. Safeco Ins. Co.,* 522 S.W.2d 809, 821[11] (Mo. banc 1975). However, the temporary substitute automobile driven by Tammy was, under the terms of State Farm's policy, an "owned" automobile, and, at the same time, Universal's insured, Chrysler Plymouth West, Inc., apparently was the title owner of this automobile. We see no useful purpose in attempting to solve here the semantical morass of who was the owner of the automobile in question at the time of the accident. More important, we are not concerned here with two personal automobile liability policies and their conflicting excess clauses; rather, we are concerned with the conflicting excess clauses of State Farm's private automobile liability policy and Universal's garage liability policy. These differences are relevant, because, arguably, one of the primary purposes of a private automobile liability policy is to insure the risks of a named individual with specific, identifiable driving habits, operating a named automobile, while the purpose of a garage liability policy is to insure the risk of operating a business—a garage—and only secondarily to insure the risks attributable to business employees . or customers who may drive vehicles owned by the business. However, whatever extrinsic concerns went into drafting of the individual

policies in question here, the fact remains that both policies by their terms afford excess coverage and we are bound by the objective theory of contract. The respective unambiguous terms in each policy reflect the intent of each party, and each policy evidences the same intent: to avoid liability in the event of adequate coverage by another insurer. As with the escape clauses, if literal effect were given to the excess clauses in both policies, the result would be that neither policy covered the loss, an absurdity which neither insurer intended. We find no compelling reason to deem one policy primary and to permit the other to provide only excess coverage. To do so requires unnecessary legal fictions and gives effect to the provisions in one policy while ignoring the same or similar provisions in the other. Since giving effect to one requires us to disregard the other, we find these clauses also to be repugnant. *See Arditi v. Massachusetts Bonding & Ins. Co., supra.*

 Disregarding both the escape provisions and the excess clauses does not leave the insured without coverage against the loss. The general coverage under the insuring agreement of each policy applies, and each insurer must insure the costs of litigation and judgment. *See, e. g., Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co.,* 28 N.J. 554, 147 A.2d 529, 533–534 (1959). However, this leaves remaining the problem of apportioning these costs. State Farm's policy has a pro rata clause and Universal's policy has none. Having decided that the escape provisions and the excess clauses in both policies are to be disregarded, the pro rata clause in State Farm's policy remains:

> "9. Other Insurance. . . . If the insured has other insurance against liability or loss covered by this policy, the company under Coverages A, B, D, F, G, R and R1, shall not be liable for a greater proportion of such liability or loss and the applicable limit of liability bears to the total applicable limit of liability of all other insurance against such liability or loss."

We are bound by the language of the policy which restricts State Farm's liability to an unequal proportion. The coverage afforded by State Farm "for bodily injury is $25,000 each person and $50,000 each accident" while that of Universal is "$10,000 each person and $20,000 each accident". Thus, State Farm is liable for 71 percent (71%) of any judgment against Tammy Wyatt and Universal is liable for 29 percent (29%) up to the limits of their respective policies; and we so hold.

Accordingly, we reverse and remand this cause and order the trial court to enter an order and judgment in accord with this opinion.

DOWD, P. J., and CRIST, J., concur.