**SHELTER MUTUAL INSURANCE
COMPANY, Respondent,**

v.

**AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Appellant.**

No. ED 87606.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 31, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 7, 2006.

Application for Transfer Denied
Jan. 30, 2007.

339

Seth G. Gausnell, Robert J. Evola, Saint Louis, MO, for respondents.

Gary P. Paul, Clayton, MO, for appellant.

## *OPINION*

GLENN A. NORTON, Presiding Judge.

American Family Mutual Insurance Company (American Family) appeals the judgment granting Shelter Mutual Insurance Company's (Shelter) motion for summary judgment on its petition for declaratory judgment. We affirm.

### I. BACKGROUND

The parties do not dispute the facts. Michael Ozbun was involved in a car accident on May 1, 2003, causing over $11,000 in property damage. He was driving a Ford Mustang owned by Jack, Nora, and Lance Kaikati. Lance had given Ozbun permission to use the vehicle. Shelter's

insurance covered liability for the Kaikatis' Mustang. The policy also covered Ozbun because he was a permissive user. Ozbun was simultaneously covered by his father's insurance through American Family. Shelter and American Family could not agree on the amount each would pay to satisfy the claims arising from the accident. Shelter petitioned for a declaratory judgment that the parties' respective policies are at odds and, therefore, liability should be shared on a pro-rata basis. Shelter moved for summary judgment on its motion.

In the motion, the insurance companies relied on the provisions of their respective policies. Both the Shelter and American Family policies purport to impose primary liability on the other company. The Shelter policy has an excess clause stating the following:

INSURANCE WITH OTHER COMPANIES

If there is other insurance which covers the Insured's liability with respect to a claim also covered by this policy, [bodily injury and property damage coverage] will apply only as excess to such other insurance.

Ozbun's American Family policy similarly states the following:

OTHER INSURANCE

If there is other auto liability insurance for a loss covered by this Part, we will pay our share according to this policy's proportion of the total of all liability limits. But, any insurance provided under this Part, for a vehicle you do not own is excess over any other collectible auto liability insurance.

The usual liability limit for property damage on the Shelter policy is $25,000. If the insured person is only insured because he is using an insured vehicle with permission of the owner, then "the limits

of [Shelter's] liability ... will be the minimum limits of liability insurance coverage specified by the Financial Responsibility Law applicable to the accident, regardless of the limits stated in the Declarations." Provisions like this are called "step-down" clauses. Missouri's Motor Vehicle Financial Responsibility Law ("MVFRL") mandates $10,000 minimum coverage for property damage. Section 303.190 RSMo 2000.[1]

The trial court granted summary judgment in Shelter's favor, finding that the excess clauses were in conflict and that, therefore, the liability should be shared on a pro-rata basis according to the liability limit of each policy. American Family's applicable limit was determined to be $100,000, while Shelter's was, according to its policy, the $10,000 statutory minimum under the MVFRL. The pro-rata liability division according to these numbers was ninety-one percent to American Family and nine percent to Shelter.

American Family appeals.

## II. DISCUSSION

We review the grant of summary judgment *de novo*. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is proper where the movant establishes that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id.* at 381. We view the evidence in the light most favorable to the party against whom summary judgment was entered. *Id.* at 376.

### A. Apportioning Liability Between Insurers With Competing Clauses Providing Only Excess Insurance

■ American Family argues that as a general rule, where two standard private

1. All statutory references are to RSMo 2000.

passenger automobile liability policies have conflicting excess clauses as to non-owner automobiles, primary liability falls on the automobile owner's insurer, rather than on the operator's insurer. In support, it cites *United States Fidelity & Guaranty Co. v. Safeco Insurance Co. of America,* 522 S.W.2d 809 (Mo.1975) (*"USF & G"*), and *State Farm Mutual Auto. Insurance Co. v. Universal Underwriters Insurance Co.,* 594 S.W.2d 950 (Mo.App. E.D.1980). American Family argues that this rule is applicable and, therefore, Shelter's other insurance clause should be disregarded and it should bear primary liability. *USF & G* and *Universal Underwriters* do not support American Family's position in this case, however, for several reasons.

In finding that the owner's insurer was primarily liable, the Court in *USF & G* stated that "[b]oth policies [in the case] contain substantially identical other insurance clauses." *USF & G,* 522 S.W.2d at 821. Further, although the Court did not recite the policy provisions, it stated that "[t]he two clauses are in agreement that coverage as to a non-owned automobile is excess" and this "accords with the general rule which places primary liability on the [owner's insurer] rather than on the insurer of the operator." *Id.* On the contrary, the clauses here are not in agreement and they do not place primary liability on the automobile owner's insurer; they are conflicting and each assigns primary liability to the other. The policies also do not accord with the general rule placing liability on the owner's insurer. Further, the Court in *USF & G* stated that the general rule applied "where we are dealing with the standard automobile liability policy." *Id.* Shelter's policy here is not standard; its policy avoids the general rule.

This Court, in *Universal Underwriters,* did not charge primary liability to the owner's insurer. *Universal Underwriters,*

594 S.W.2d at 958. We went to great lengths to discuss how that case, involving conflicting excess clauses of a private automobile liability policy and a garage liability policy, was different than one involving conflicting excess clauses in two automobile liability policies. *Id.* at 957–58. The Court noted the purposes of the two kinds of policies:

> [O]ne of the primary purposes of a private automobile liability policy is to insure the risks of a named individual with specific, identifiable driving habits, operating a named automobile, while the purpose of a garage liability policy is to insure the risk of operating a business[,] a garage[,] and only secondarily to insure the risks attributable to business employees or customers who may drive vehicles owned by the business.

*Id.* at 957. American Family argues that, while this Court did not charge primary liability to the owner's insurer, the quoted language implies the result would be different in a case of two automobile policies. A closer reading of the text, however, reveals that the Court was expressing concern over equating the two policies' provisions when determining liability for an automobile accident where insuring drivers was only the *secondary* purpose of the garage policy. *Id.* at 957–58. The Court continued, explaining that, despite these concerns, it would follow contract law principles and not deem one policy primary over another. *Id.*

Similarly, here, we will not be concerned with the potential purposes of each policy; we will follow contract law in interpreting the policies. *See Peters v. Employers Mutual Casualty Co.,* 853 S.W.2d 300, 301–02 (Mo. banc 1993). Following contract law, Missouri courts have consistently held that where two policies have competing excess insurance clauses, they are treated as mutually repugnant and disregarded. *See,*

*e.g., Heartland Payment Systems, LLC v. Utica Mutual Insurance Co.*, 185 S.W.3d 225, 231 (Mo.App. E.D.2006); *Rader v. Johnson*, 910 S.W.2d 280, 285 (Mo.App. W.D.1995); *Universal Underwriters Ins. Co.*, 594 S.W.2d at 958. Once the clauses are disregarded, liability is apportioned between the insurers pro-rata based on the percentage of total liability each provides. *Rader*, 910 S.W.2d at 285. The trial court accurately stated and applied this rule in its judgment. It found the clauses mutually repugnant, disregarded them, and apportioned liability on a pro-rata basis.

American Family also argues that even if the clauses are found to be mutually repugnant and liability is apportioned pro-rata, the apportionment should be even between the two insurers because, if the MVFRL requires minimum coverage by owners' and operators' policies, the apportionment should be pro-rata to comply with those requirements. This reasoning does not follow the rule stated in *Rader.* The insurers do not divide the liability equally because a statute directs some minimum coverage; the liability is divided by the percentage of total liability each provides. *Id.* Shelter's policy's coverage for permissive users was $10,000, and American Family's was $100,000. The trial court correctly entered summary judgment in favor of Shelter and apportioned liability on a pro-rata basis, by these limits, as ninety-one percent to American Family and nine percent to Shelter.

This point is denied.

## B. Validity, Under the MVFRL, Of An Owner's Policy Providing Only Excess Insurance For Non-owner Operators

■ In its next point, American Family asserts that Shelter's policy violates the MVFRL, in that it believes the MVFRL requires an owner's policy to provide pri-

mary coverage to the owner and any permissive user for at least $10,000 of property damage.

American Family's argument is contradictory to the analysis in *Budget Rent A Car of St. Louis v. Guaranty National Insurance Co.* 939 S.W.2d 412 (Mo.App. E.D.1996). In *Budget,* Budget argued that the MVFRL required an owner's policy to carry primary coverage. *Id.* at 415. This Court disagreed, finding that parties are free to contract and the statute does not require primary coverage. *Id.*

We are not persuaded by American Family's attempts to distinguish *Budget* from this case. First, it cites *American Standard Insurance Co. v. Hargrave* for the proposition that an owner's insurer cannot make its policy excess over another owner's policy due to the requirements of the MVFRL. 34 S.W.3d 88 (Mo. banc 2000). The analysis in *Hargrave,* however, is not analogous to our analysis in this case. In *Hargrave,* after one owner's insurer paid the minimum amount under the MVFRL to one claimant from an accident, another owner's insurer refused any coverage to a related claimant with outstanding liability, invoking its household exclusion clause and claiming the MVFRL minimum had been fulfilled. *Id.* at 89. The court found that the second insurer was required to provide the statutory minimum coverage on an owner's policy to outstanding liability, even if another owner's policy had already paid the minimum coverage to a related claimant. *Id.* at 92. American Family would have us find this holding prevents Shelter from being primarily liable.

The court in *Hargrave,* however, dismissed the insurer's attempt to argue its right to deny coverage fell under its other insurance clause, noting that "the excess insurance issue is irrelevant to the core issue of this case, the application of section

303.190.2[to] ... policies [with] household exclusion clause[s]." *Id.* at 92. The case here is entirely different than *Hargrave* because the core issue is owners' and operators' policies with conflicting other insurance clauses; we do not address any household exclusion clauses. Also, coverage has not been denied in this case; it is only an issue of distinguishing primary or excess coverage. The reasoning in *Hargrave* is not persuasive here.

Further, American Family argues that *Budget* is not applicable because it failed to analyze section 303.190.9, which American Family claims only allows for prorating and does not allow for excess coverage. Section 303.190.9 states in its entirety that "[a]ny motor vehicle liability policy may provide for the prorating of the insurance thereunder with other valid and collectible insurance." It does not in any way prohibit making a policy only excess in a situation such as this case, just as no other provision of section 303.190 so prohibits.

American Family's additional argument that section 303.190.2 mandates primary coverage by the owner is also not convincing. American Family claims that the stricter statutory language addressing owners' policies, as opposed to the more lenient language for operators' policies, supports this contention. We disagree. While the section does require an owner's policy to supply minimum coverage, nowhere does it require the policy to provide primary coverage. *Budget*, 939 S.W.2d at 415. American Family's attempts to characterize *Budget* as inconsistent with the MVFRL's policy of providing minimum coverage to accident victims are inaccurate. *See Halpin v. American Family Mutual Insurance Co.*, 823 S.W.2d 479, 482 (Mo. banc 1992) (stating the partial purpose of the MVFRL). "The purpose of the [MVFRL] is to protect accident victims, who have no concern as to whether coverage is primary or excess so long as there is coverage somewhere. An owner could comply with the statute by means of a policy requiring first resort to other insurance." *Budget*, 939 S.W.2d at 415.

American Family's other arguments that Shelter's other insurance clause violates the MVFRL are conclusory, repetitive, or rely on non-Missouri cases. We are not persuaded by these arguments or authorities.

This point is denied.

## C. Validity And Ambiguity, Under The MVFRL, Of A Step–Down Provision Providing Only The Minimum Coverage Specified By Financial Responsibility Law

█ American Family argues that Shelter's step-down clause is ambiguous and violates the MVFRL because its policy does not expressly state the dollar amount of coverage for permissive users. It cites section 303.190.4 in support of its contention. Section 303.190.4 of the MVFRL states that "[a] motor vehicle liability policy shall state the name and address of the named insured, the coverage afforded by the policy, the premium charged therefor, the policy period and the limits of liability...."

American Family concedes that this Court accepted the validity of step-down clauses in *Windsor Insurance Co. v. Lucas*, but argues that the language used in Shelter's policy does not conform to the statute's requirements. 24 S.W.3d 151 (Mo.App. E.D.2000). The policy in question in *Lucas* stated "[t]he limits of liability for a permissive user will be equal to minimum limits of liability specified by the Financial Responsibility Law of the state in which the accident occurs." *Id.* at 153. This Court could not find "as a matter of law that the insurance policy is ambiguous or creates uncertainty or indistinctness in

the meaning of words used." *Id.* We also found no public policy violation in providing a lower amount of coverage for permissive drivers, provided that a step-down provision was provided in the policy, even if the policy defined the lower limit only by the financial responsibility law. *Id.* at 154–55 (citing *Trantham v. Old Republic Insurance Co.*, 797 S.W.2d 771 (Mo.App. E.D.1990) (upholding a policy listing only the minimum requirements of Missouri's financial responsibility law)).

Shelter's policy here is nearly identical to that in *Lucas* and conforms to section 303.190.4. Neither policy showed the step-down limit on its declarations page, but both listed the limit within the policy as defined by the financial responsibility law. *See Lucas,* 24 S.W.3d at 153. Additionally, nothing in section 303.190.4 dictates that a dollar amount of coverage be provided. A policyholder is availed of the policy's limits of liability and coverage afforded for permissive users by the policy's terms. Therefore, Shelter's step-down clause does not violate the MVFRL and is not ambiguous.

This point is denied.

### III. CONCLUSION

The judgment is affirmed.

LAWRENCE E. MOONEY, J., and KENNETH M. ROMINES, J., concurring.