**PROGRESSIVE NORTHWESTERN INSURANCE COMPANY,**
Appellant,

v.

Patricia TALBERT, Respondent.

No. SD 32210.

Missouri Court of Appeals,
Southern District,
Division One.

March 26, 2013.

Application for Transfer to Supreme
Court Denied April 15, 2013.

Application for Transfer Denied
Aug. 13, 2013.

Daniel E. Wilke and Kathy M. Wilke, of St. Louis, MO, for Appellant.

Cynthia O. MacPherson and Ashleigh MacPherson, of Mountain Grove, MO, for Respondent.

WILLIAM W. FRANCIS, JR., J.

Progressive Northwestern Insurance Company ("Progressive") brought a declaratory judgment action against Patricia Talbert ("Talbert") to determine the amount of liability coverage available to Talbert following her injuries in a motorcycle accident. The trial court granted Talbert's motion for summary judgment and denied Progressive's motion for summary judgment. We reverse the judgment of the trial court and enter judgment in favor

of Progressive on its motion for summary judgment.

## Factual and Procedural Background

On November 7, 2009, Talbert sustained bodily injury while riding as a passenger on a 2005 Honda VTX1300 motorcycle ("motorcycle") operated by her husband, Frank Talbert ("Frank").[1] Talbert alleged that she incurred approximately $105,000 in medical bills for injuries sustained in the motorcycle accident. For purposes of summary judgment, Progressive admitted this fact was uncontroverted.

At the time of the collision, the motorcycle was insured by a motorcycle policy (the "policy") issued by Progressive to Frank, with liability limits of $100,000 for each person and $300,000 for each accident. At the time of the accident, Frank and Talbert were married and residents of the same household. The policy contained a number of exclusions, including a "household exclusion clause," which reads:

> Coverage under this Part I, including our duty to defend, will not apply to any insured person for:
>
> . . . .
>
> 11. **bodily injury** to **you** or a **relative;**
>
> . . . .
>
> If a court with proper jurisdiction determines an exclusion is partly or wholly invalid or unenforceable because it does not satisfy the minimal requirements of the Motor Vehicle Financial Responsibility Law, the exclusion will only apply to the extent that limits of liability of this policy exceeds the limits of liability required by law.

On December 8, 2010, Progressive filed a "Petition for Declaratory Judgment" asking the trial court to construe the terms of the policy and determine whether the insurance policy provided $100,000 or $25,000 in liability coverage to Talbert for her injuries. On March 18, 2011, Talbert filed her answer to Progressive's Petition for Declaratory Judgment, and asserted that she was "entitled to a declaratory of law that she is entitled to insurance coverage pursuant to the contract provided by [Progressive] of $100,000, for the injuries she sustained in this accident." [2]

Talbert and Progressive both filed cross-motions for summary judgment, and the issue in both motions was whether the policy's household exclusion clause was valid. Progressive's motion for summary judgment acknowledged that the Missouri Vehicle Financial Responsibility Law ("MVFRL"), sections 303.010–303.370,[3] has invalidated exclusion clauses up to the statutory minimum of $25,000, and cited *Halpin v. American Family Mut. Ins. Co.*, 823 S.W.2d 479 (Mo. banc 1992). For that reason, Progressive sought an order declaring that the maximum amount recoverable by Talbert was $25,000, to the minimum amount allowed by MVFRL. Talbert's motion for summary judgment requested the trial court declare the household exclusion clause unenforceable because it is ambiguous, unreasonable under contract principles, and against public policy.

On July 9, 2012, the trial court granted Talbert's motion for summary judgment finding "the insurance contract, as a matter of law, is an unconscionable adhesion

---

1. Because a portion of the involved parties share the same surname, for ease of reference we refer to some of the parties by their first names. We mean no familiarity or disrespect.

2. Talbert's prayer for relief also asserted that she was entitled to coverage under the policy in the amount of $100,000.

3. All references to statutes are to RSMo 2000, unless otherwise indicated.

contract under Missouri law" and overruled Progressive's motion for summary judgment. The trial court also ordered post-judgment interest on the unpaid policy limits of $75,000 to accrue at the legal rate of 5.25% from the date of the judgment. Progressive appeals this judgment.

 Progressive contends the household exclusion clause is valid and enforceable as to amounts in excess of $25,000 (MVFRL limits), does not violate public policy, and is not unconscionable or ambiguous. Progressive also argues the trial court erred in awarding damages to Talbert because: (1) Talbert did not have a judgment against Progressive as a basis for damages; (2) Talbert did not file a counterclaim against Progressive; and (3) Talbert did not prove entitlement to an award of damages. Talbert contends the Progressive policy is ambiguous because: (1) of the positioning of the exclusionary language in different parts of the contract; (2) of an indemnification provision requiring the insured to reimburse Progressive for any payment made by Progressive; (3) it incorporates by reference the MVFRL to define and explain coverage in its policy; (4) the policy only states coverage limited to amounts required by MVFRL and does not state the specific amount to which coverage would be limited; and (5) the

declarations page does not advise that coverage for a family member is limited to $25,000 per accident. Talbert also contends the exclusion is no longer viable in light of extensive discovery available to litigants, and that it violates public policy.[4] As to damages, Talbert argues damages were properly pled and were repeatedly admitted by Progressive.

The issue for our determination is whether Progressive's household exclusion clause is valid and enforceable as a matter of law. We find the policy is partially enforceable in accordance with *Halpin*, 823 S.W.2d at 479 and the MVFRL. In light of this holding, we need not address the remaining claim of error regarding damages.

## Standard of Review

 Appellate review of a grant of summary judgment is *de novo*. *Kinnaman–Carson v. Westport Ins. Corp.*, 283 S.W.3d 761, 764 (Mo. banc 2009). "The Court reviews the record in the light most favorable to the party against whom summary judgment was entered." *Id.* Summary judgment will be upheld on appeal if there is no genuine issue of material fact and movant is entitled to judgment as a matter of law. *ITT Commercial Finance Corp. v. Mid–America Marine Supply*

---

4. Talbert filed a "Motion to Dismiss Appeal and to Award Frivolous Appeal Damages," which was taken with the case. In her motion, Talbert argues that Progressive's statement of facts, points relied on, and argument contain deficiencies. While it is within our discretion to dismiss an appeal for failure to comply with Rule 84.04, "[w]e will not exercise our discretion to dismiss an appeal for technical deficiency under Rule 84.04 unless the deficiency impedes disposition on the merits." *Gray v. White*, 26 S.W.3d 806, 816 (Mo.App. E.D.1999). We can clearly discern the essence of Progressive's complaints of trial court error and, therefore, deny Talbert's motion to dismiss and address Progressive's

complaints on their merits. Talbert also alleges she is entitled to an award of frivolous appeal damages. "An appeal is frivolous if it presents no justifiable question and is so readily recognizable as devoid of merit on the face of the record that there is little prospect that it can ever succeed." *Dennis v. H & K Mach. Serv. Co.*, 186 S.W.3d 484, 487 (Mo. App. E.D.2006). "This court awards damages under Rule 84.19 with great caution[.]" *Stiens v. Stiens*, 231 S.W.3d 195, 200 (Mo. App. W.D.2007). We do not find Progressive's appeal to be frivolous and, therefore, Talbert's motion is denied.

All rule references are to Missouri Court Rules (2012).

*Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993). "The key to summary judgment is the undisputed right to judgment as a matter of law, not simply the absence of a fact question." *Zerebco v. Lolli Bros. Livestock Market,* 918 S.W.2d 931, 934 (Mo.App. W.D.1996). "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *ITT Commercial Finance Corp.*, 854 S.W.2d at 376. "As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment." *Id.* If the trial court fails to specify the grounds for granting summary judgment, this Court can affirm if it is proper under any theory supported by the record and presented on appeal. *Conway v. St. Louis County,* 254 S.W.3d 159, 164 (Mo.App. E.D.2008).

■ The interpretation of an insurance policy is a question of law that this Court also determines *de novo. Ritchie v. Allied Property & Cas. Ins. Co.,* 307 S.W.3d 132, 135 (Mo. banc 2009). " 'In construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance, and resolves ambiguities in favor of the insured.' " *Id.* (quoting *Seeck v. Geico General Ins. Co.,* 212 S.W.3d 129, 132 (Mo. banc 2007)). "To determine the ordi-

nary meaning, this Court consults standard English language dictionaries." *Shahan v. Shahan,* 988 S.W.2d 529, 535 (Mo. banc 1999) (White, J., dissenting). However, applying rules of construction is unnecessary when a contract provision is clear and unambiguous. *Id.*

## Analysis

■ Talbert urges this Court to declare the household exclusion clause invalid per se.[5] We decline to do so. A brief review of the recent history of the clause is appropriate.

### *"Household Exclusion Clause" in Missouri*

While generally disfavored, [household exclusion] clauses are permissible 'to exempt the insurer from being required to cover claims by those persons to whom the insured, on account of close family ties, would be apt to be partial in the case of injury; the exclusion serves to protect the insurer against collusive or cozy claims.'

*Shahan,* 988 S.W.2d at 539–40 (quoting "8 Couch on Insurance 3d 114:25–26"). Beginning with *Halpin,* 823 S.W.2d at 479, Missouri courts have repeatedly found household exclusion clauses are valid as to any coverage exceeding the amounts mandated by the MVFRL.[6]

In *Halpin,* the Supreme Court of Missouri reviewed the MVFRL,[7] and found

---

5. The parties agree that there is no dispute as to the material facts of this case.

6. In *American Family Mut. Ins. Co. v. Ward,* the Supreme Court of Missouri held that public policy did not require that the household exclusion clause (also referred to as "family exclusion clause") be found completely void, despite the adoption of contribution and apportionment among joint tort-feasors and the abrogation of interspousal immunity. 789

S.W.2d 791, 796 (Mo. banc 1990). The *Halpin* case was transferred to the Supreme Court of Missouri because of speculation about the effect of changes to the MVFRL on the holding in *Ward. See Halpin,* 823 S.W.2d at 480.

7. The MVFRL became effective July 1, 1987, and repealed certain sections of the Motor Vehicle Safety Responsibility law. "[Sections] 303.010–303.370, RSMo 1978, L. 1953,

the purpose served by the MVFRL "is to make sure that people who are injured on the highways may collect damage awards, within limits, against negligent motor vehicle operators. This protection extends to occupants of the insured vehicles[.]" *Halpin*, 823 S.W.2d at 482. The MVFRL added the requirement that owners of a motor vehicle maintain "financial responsibility." § 303.025. *See Halpin*, 823 S.W.2d at 480. Section 303.190, which specifies the minimum insurance coverage of $25,000 per person, was not changed by the MVFRL.

The *Halpin* court agreed that "public policy requires that a contract of liability insurance provide the coverage indicated in § 303.190 so that the insured will be in compliance with § 303.025[ ]" and, therefore, concluded that the purpose of the MVFRL would not be fulfilled "if the household exclusion clause were *fully* enforced." *Id.* at 482 (emphasis added). The *Halpin* court's reasoning was that the legislature's "pervasive purpose" was to require motor vehicle liability policies to provide coverage subject to the statutory limits. *Id.* However, the *Halpin* court refused to find the household exclusion clause entirely void in light of section 303.190.7, which reads as follows:

> Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of this chapter. *With respect to a policy which grants such excess or additional coverage the term "motor vehicle liability policy" shall apply only to that part of the coverage which is required by this section.*

Section 303.190.7 (emphasis added).

█ Section 303.190.7 "manifests to insureds that they have no basis for expecting coverage in excess of the requirements of § 303.190.2." *Halpin*, 823 S.W.2d at 483. Insurers and policyholders are free to make insurance contracts including household exclusion clauses affecting coverage in excess of $25,000.

Just weeks after the *Halpin* opinion, this Court was faced with the same issue: the validity of the household exclusion clause by reason of the MVFRL. *State Farm Mutual Automobile Ins. Co. v. Zumwalt*, 825 S.W.2d 906 (Mo.App. S.D. 1992).[8] Applying *Halpin*, we determined the household exclusion clause was void insofar as it denied coverage in the amount required by section 303.190.2 ($25,000), but valid as to any coverage exceeding that amount. *Zumwalt*, 825 S.W.2d at 909.

The *Halpin* reasoning has been applied in numerous cases, including cases involving household exclusions and other policy exclusions, in the years since its decision. For example, in *American Standard Ins. Co. of Wisconsin v. Bracht*, 103 S.W.3d 281 (Mo.App. S.D.2003), this Court held a set-off provision in the policies, "[c]onsistent with *Halpin*," did not violate public policy so long as application of the provision resulted in liability coverage equal to or greater than the minimum required by the MVFRL. *Id.* at 288. In *Distler v. Reuther Jeep Eagle*, 14 S.W.3d 179, 183 (Mo. App. E.D.2000), a "car business" exclusion

---

p. 569 (as amended §§ 303.010–303.370, RSMo 1986, L. 1986, S.B. 424)." *Halpin*, 823 S.W.2d at 480.

**8.** Appellant also argued State Farm, by initially assuming a defense, waived the household

exclusion clause. *Zumwalt*, 825 S.W.2d at 908–11. Waiver is not an issue in this case and, therefore, we do not address that portion of the *Zumwalt* opinion.

was found to be partially invalid by the MVFRL and the interpretation in *Halpin* because it restricted the class of permissive users and the minimum coverage requirement extends to permissive users. In *Cashon v. Allstate Ins. Co.*, 190 S.W.3d 573, 577 (Mo.App. E.D.2006), the court found the notice and cooperation clauses of a policy were unenforceable "to the extent they are asserted to deny Plaintiffs the minimum liability coverage required by Section 303.190.2(2)." In these cases, the courts did not find the exclusions and clauses violated public policy, but simply violated the minimum coverage requirements of the MVFRL.

In addition, courts have held household exclusion clauses in other types of insurance policies valid and unaffected by *Halpin* when the MVFRL does not apply. For instance, in *State Farm Fire & Cas. Co. v. Berra*, 891 S.W.2d 150 (Mo.App. E.D.1995), the court found a household exclusion clause in a boat owner's policy was not void as against public policy. Because the MVFRL did not apply to the subject watercraft, *Halpin* did not affect the household clause, which was enforceable. *Berra*, 891 S.W.2d at 153. The MVFRL did not make the household exclusion clause void, but only invalid to the extent it conflicts with the MVFRL.

Eight years after *Halpin*, our supreme court reiterated the *Halpin* position in *American Standard Ins. Co. v. Hargrave*, 34 S.W.3d 88 (Mo. banc 2000), where the issue was the application of section 303.190 when an insured is covered by multiple liability policies with household exclusion clauses. Even though the issues were different, *Hargrave* is helpful because it makes clear our supreme court's *continued* support of the *Halpin* decision that household exclusion clauses are not entirely invalid per se, but rather only partially invalid to the extent the clause denies coverage in the amounts mandated by the MVFRL—$25,000 per person. *See Hargrave*, 34 S.W.3d at 92 (noting that each policy must provide the minimum financial requirements of the MVFRL).

■ "We are constitutionally controlled by decisions of the Supreme Court of Missouri." *Zumwalt*, 825 S.W.2d at 909 (citing Mo. Const. art. V, § 2 (1945)).[9] For the last twenty years, Missouri courts have consistently upheld the *Halpin* decision. Our legislature has also remained silent as to the clause. For these reasons, we reject Talbert's argument that the household exclusion clause should be found invalid in its entirety.[10] The policy's household exclusion clause is partially enforceable in accordance with the Supreme Court of Missouri's decision in *Halpin*.

### Progressive Insurance Contract is not Ambiguous or Unconscionable

■ Talbert argued this Court could decide this case based on ambiguity,

---

9. Although Talbert cites a Kentucky case, *Lewis v. West American Insurance Company*, 927 S.W.2d 829 (Ky.1996), in support of her public policy argument, she acknowledged at oral argument that this Court is constitutionally bound to follow decisions of the Supreme Court of Missouri.

10. Talbert argues the "freedom of contract" argument is a "disingenuous assertion." However, the Supreme Court of Missouri and this Court have recognized that parties are free to contract beyond what is required by the MVFRL. *See Halpin*, 823 S.W.2d at 482–

83. For this reason, courts have declined to extend the public policy reasoning for partial invalidity beyond the statutory requirements of the MVFRL. In *State Farm Mut. Auto. Ins. Co. v. Butler*, the Eastern District held "[t]here is no justification in public policy to extend coverage in the case of a permissive user beyond what is required by the MVFRL and thus encroach on the parties' freedom to contract." 904 S.W.2d 350, 353 (Mo.App. E.D.1995) (citing *Halpin*, 823 S.W.2d at 482–83).

and requested this Court find that the policy is ambiguous and, therefore, unenforceable. However, when proposed by this Court at oral argument, Talbert was unable to point to any ambiguity in the policy language that was presented to the trial court at the time of summary judgment. The trial court did find in its Judgment that the policy "as a matter of law, is an unconscionable adhesion contract under Missouri law[.]" However, an insurance contract is a contract of adhesion. *Estrin Construction Company, Inc. v. Aetna Casualty and Surety Co.*, 612 S.W.2d 413, 418 (Mo.App. W.D.1981). The *Estrin* court succinctly described an adhesion contract as a standardized contract created by the stronger of the contracting parties, allowing for no negotiations between the parties, and offered on the basis of "this or nothing." *Id.* at 418 n. 3.

Because of the circumstances of adhesion contracts, some courts consider the entire transaction and apply the "reasonable expectations doctrine" to insurance contracts. *Robin v. Blue Cross Hospital Service, Inc.*, 637 S.W.2d 695, 697 (Mo. banc 1982) (citing 3 Corbin on Contracts §§ 534–542 (1960); Restatement (Second) of Contracts, §§ 226–227 (Tentative Draft 1973)). The reasonable expectations doctrine is "[a] rule provid[ing] the objective reasonable expectations of adherents and beneficiaries to insurance contracts will be honored even though a thorough study of the policy provisions would have negated these expectations." *Id.* However, an argument for the application of the reasonable expectation doctrine "depends on the presence of an ambiguity in the [insurance] contract language." *Rodriguez v. General Acc. Ins. Co. of America*, 808 S.W.2d 379, 382 (Mo. banc 1991). Even if we were to assume that the policy at issue is a contract of adhesion, we must find ambiguity in the policy language in

order to apply the doctrine of reasonable expectations. *See Kellar v. American Family Mutual Insurance Co.*, 987 S.W.2d 452, 455 (Mo.App. W.D.1999).

" 'An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions.' " *Seeck*, 212 S.W.3d at 132 (quoting *Gulf Ins. Co. v. Noble Broadcast*, 936 S.W.2d 810, 814 (Mo. banc 1997)). Furthermore, " 'if a contract promises something at one point and takes it away at another, there is an ambiguity.' " *Seeck*, 212 S.W.3d at 133 (quoting *Lutsky v. Blue Cross Hosp. Serv., Inc.*, 695 S.W.2d 870, 875 (Mo. banc 1985)). "Whether an insurance policy is ambiguous is a question of law." *Martin v. U.S. Fidelity and Guar. Co.*, 996 S.W.2d 506, 508 (Mo. banc 1999). Policy language that is ambiguous will be construed against the insurer. *Seeck*, 212 S.W.3d at 132.

Absent an ambiguity, an insurance policy must be enforced according to its terms. *Rodriguez*, 808 S.W.2d at 382. "A court is not permitted to create an ambiguity or distort the language of an unambiguous policy in order to enforce a particular construction that it deems more appropriate." *Lynch v. Shelter Mut. Ins. Co.*, 325 S.W.3d 531, 535 (Mo.App. S.D. 2010) (citing *Rodriguez*, 808 S.W.2d at 382). A court must not interpret an insurance policy provision in isolation but rather evaluate a policy as a whole. *Lynch*, 325 S.W.3d at 535. "Thus, where insurance policies are unambiguous, they will be enforced as written absent a statute or public policy requiring coverage." *Rodriguez*, 808 S.W.2d at 382. *See Butler*, 904 S.W.2d. at 352.

■ We find Progressive's policy language unambiguous with respect to the household exclusion clause, which reads:

Coverage under this Part I, including our duty to defend, will not apply to any insured person for:

. . . .

11. **bodily injury to you or a relative;**

. . . .

If a court with proper jurisdiction determines an exclusion is partly or wholly invalid or unenforceable because it does not satisfy the minimal requirements of the Motor Vehicle Financial Responsibility Law, the exclusion will only apply to the extent that limits of liability of this policy exceeds the limits of liability required by law.

The insurance policy issued to Frank provides that terms printed in boldface type are defined terms. The terms "relative" and "you" are printed in boldface type in the household exclusion clause and, therefore, are defined terms. If a term is defined in the policy, the policy definition controls. *State Farm Mut. Auto. Ins. Co. v. Ballmer*, 899 S.W.2d 523, 525 (Mo. banc 1995). The policy defines these terms as follows:

10. "**Relative**" means a person residing in the same household as you, and related to you by blood, marriage, or adoption[.]

. . . .

15. "**You**" and "**your**" mean:

a. a person shown as a named insured on the **declarations page;** and

b. the spouse of a named insured if residing in the same household at the time of the loss.

The plain language of the household exclusion clause is devoid of ambiguity. The exclusion in the policy excludes coverage for "bodily injury to . . . a relative." The policy lists Frank as the named insured; Talbert lived with and was married to Frank at the time of the accident. Talbert, therefore, is a "relative" as defined by the policy.[11] To summarize, the plain language of the household exclusion clause precludes coverage above the MVFRL for bodily injury to a "relative." Talbert is a relative and, therefore, is precluded from recovering above the minimal requirements of the MVFRL.[12]

The Supreme Court of Missouri has reviewed household exclusion clauses for ambiguity and determined clauses much more wordy were unambiguous. For example, in *Ballmer,* our supreme court found the following exclusion unambiguously excluded coverage, overruling *State Farm Mut. Auto. Ins. Co. v. Carney,* 861 S.W.2d 665, 668–69 (Mo.App. E.D.1993): " 'THERE IS NO COVERAGE . . . FOR ANY *BODILY INJURY* TO . . . ANY INSURED OR ANY MEMBER OF AN INSURED'S FAMILY RESIDING IN THE INSURED'S HOUSEHOLD.' " *Ballmer,* 899 S.W.2d at 525 (emphasis in original).[13] In *Ballmer,* the driver was a permissive user,

---

11. The household exclusion also precludes coverage for bodily injury to "**You.**" Talbert also meets the definition of "**You**" in that she is the "spouse of a named insured . . . residing in the same household at the time of the loss."

12. Talbert is also precluded from recovering above the MVFRL minimal requirements because she meets the definition of "**You.**"

13. *See also Shahan,* 988 S.W.2d at 535 (holding the plain language of the household exclusion clause that excluded coverage " 'for any bodily injury to . . . any insured or any member of an insured's family residing in the insured's household' " precluded recovery beyond the $25,000 required by the MVFRL).

therefore, an insured, while the injured party was a passenger living in the same house as the driver. *Id.* at 524. The supreme court reviewed the second exclusion: "ANY MEMBER OF AN INSURED'S FAMILY RESIDING IN INSURED'S HOUSEHOLD." *Id.* at 525. Under this exclusion, an injured person is not entitled to recover under the policy if he or she resides with a family member who falls within the policy definition of "insured." *Id.* The court noted the exclusion and definition of "insured" had to be read together "so that all relevant portions of the contract are given meaning," and found the household exclusion was clear in light of the policy definition of "insured." *Id.* at 526.

We believe that an ordinary person can see that liability coverage is subject to the household exclusion limitation for claims of a relative. The heading of the exclusion portion of the policy draws attention to this section by boldface type in all capital letters, and encourages the reader to read this section "carefully." The heading reads:

> *EXCLUSION*—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART 1.

Talbert contends the Progressive policy is ambiguous for the following reasons:[14]

*A. Positioning.* There are 17 exclusions listed in the policy. Talbert argues that the household exclusion clause, which is paragraph 11 of the 17 exclusions, is the only exclusion impacted by the "MVFRL modification" language contained at the end of the exclusions as follows:

> If a court with proper jurisdiction determines an exclusion is partly or wholly invalid or unenforceable because it does not satisfy the minimum requirements of the Missouri Motor Vehicle Financial Responsibility Law, the exclusion will only apply to the extent that the limits of liability of this policy exceed the limits of liability required by law.

Talbert argues placing the MVFRL modification at the end of the list of 17 exclusions makes it "virtually impossible to discern what is and is not covered." We reject this argument.

First, there is no indication that the MVFRL modification applies only to the household exclusion in the policy. The purpose of the MVFRL is to protect those injured in motor vehicle accidents by allowing them to collect at least minimal damage awards. *Hargrave,* 34 S.W.3d at 90. Exclusions in policies which deny coverage are unenforceable to the extent that they purport to deny the coverage required by the MVFRL. See *Halpin,* 823 S.W.2d at 483. "[I]f an insurance contract's policy provisions conflict with the minimum requirements of . . . the MVFRL, those provisions are unenforceable to the extent they purport to deny the minimum liability coverage required by the statute." *Rodgers–Ward v. American Standard Ins. Co. of Wisconsin,* 182 S.W.3d 589, 592 (Mo.App. E.D.2005). Progressive admits that the MVFRL modification paragraph would apply to any exclusions or conditions that would be invalidated by a court.[15]

---

14. Talbert also argues she is entitled to Underinsured Motorist Coverage (UIM coverage). However, Talbert fails to establish how the existence or non-existence of available UIM coverage creates an ambiguity in the policy. In addition, UIM coverage was not raised in Talbert's motion for summary judg-

ment. Under Rule 74.04(c), a motion for summary judgment must state the legal basis for the motion.

15. *See Rodgers–Ward,* 182 S.W.3d at 589 (finding the "cooperation clause" unenforceable because it denied minimum coverage un-

Additionally, the Supreme Court of Missouri rejected a similar argument that ambiguity was created because of the placement of the provision in *Harrison v. MFA Mutual Insurance Co.,* 607 S.W.2d 137, 142 (Mo. banc 1980). "Where language in an insurance contract is unequivocal, it is to be given its plain meaning notwithstanding the fact it appears in a restrictive provision of a policy." *Id.* The MVFRL modification is clear and in a logical location following the exclusions. An ordinary person reading this section would first read that the policy excluded coverage for various reasons; however, those exclusions will only apply to the extent allowed under the MVFRL. To hold otherwise would require this Court to invent ambiguity, which some might consider the desired outcome, but which is not otherwise permissible under the policy or the law.

***B. Indemnification.*** Talbert argues there is an indemnification provision in the policy, which makes the policy ambiguous when read in its entirety. The Supreme Court of Missouri has recognized on numerous occasions the freedom of contract in liability insurance. *Ward,* 789 S.W.2d at 791; *Halpin,* 823 S.W.2d at 479. In addition, section 303.190.8 specifically allows for this type of provision:

> Any motor vehicle liability policy may provide that the insured shall reimburse the insurance carrier for any payment the insurance carrier would not have been obligated to make under the terms of the policy except for the provisions of this chapter.

§ 303.190.8. For those reasons, we do not find the indemnification creates an ambiguity.

 ***C. Incorporating the MVFRL by reference.*** Talbert argues the policy is ambiguous because it incorporates the MVFRL, yet admitted at oral argument this is an acceptable practice in Missouri. "It is well settled that matters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract in haec verba." *Jim Carlson Const. Inc. v. Bailey,* 769 S.W.2d 480, 481 (Mo.App. W.D.1989). Under contract law, Talbert's argument is rejected.

***D. No coverage amount stated in MVFRL modification.*** Next, Talbert argues the policy is ambiguous because the policy does not state the specific dollar amount to which coverage is limited, but rather provides the coverage is limited to the minimal requirements of the MVFRL. Section 303.190.4 provides a "motor vehicle liability policy shall state ... the coverage afforded by the policy[.]" § 303.190.4. Here the policy stated the "exclusion will only apply to the extent that the limits of liability of this policy exceed the limits of liability required by law." This language conforms with section 303.190.4. *See Shelter Mut. Ins. Co. v. American Family Mut. Ins. Co.,* 210 S.W.3d 338, 343–44 (Mo.App. E.D.2006) (noting "nothing in section 303.190.4 dictates that a dollar amount of coverage be provided.").

***E. Declarations page does not advise family member coverage limited to $25,000.*** Lastly, Talbert argues the declarations page creates ambiguity because it indicates the insured will have liability coverage in the amount of $100,000 each person, with no indication that liability coverage is in any way reduced or diminished due to family relationships. The essential terms of an insurance policy are typically stated in condensed form on a declarations

der the MVFRL); *Distler,* 14 S.W.3d at 183 (holding "car business" exclusion in policy restricted class of permissive users who are

covered and, therefore, was partially invalidated by the MVFRL).

page. *See Todd v. Missouri United School Ins. Council,* 223 S.W.3d 156, 160 (Mo. banc 2007). Insurance policies routinely include exclusions, which "limit risks that otherwise might have been covered[.]" *Id.* An insurance policy must be evaluated as a whole, rather than provisions in isolation. *Ritchie,* 307 S.W.3d at 135.

Talbert cites *Lutsky,* 695 S.W.2d at 875, in support of her position that the policy should have notified Talbert in the declarations page that coverage for a relative is limited to $25,000. However, *Lutsky* is distinguishable from this case because it involved "contracts containing contradictory or necessarily inconsistent language in different portions of the instruction, [and not] analysis of the effect of any exclusion." *Todd,* 223 S.W.3d at 163 n. 4. Insurance policies customarily include exclusions that exclude from coverage otherwise covered risks. *Id.* at 163. "While a broad grant of coverage in one provision that is taken away by a more limited grant in another may be contradictory and inconsistent, the use of definitions and exclusions is not necessarily contradictory or inconsistent." *Id.* Exclusions are essential provisions in insurance policies, and are routinely contained in such policies. *Id.* It is well settled that if the exclusions are clear and unambiguous within the context of the policy as a whole, they are enforceable. *Id.*

We recognize that public policy requires exclusions to be narrowly construed against exclusion. *Shahan,* 988 S.W.2d at 539. However, we are not free to create an ambiguity to give a construction that invalidates an exclusion. *See Lynch,* 325 S.W.3d at 535 (citing *Rodriguez,* 808 S.W.2d at 382). We find the household exclusion clause was clear and unambiguous. Talbert has failed to "overcome the rule that construction of insurance contracts is unnecessary when a contract pro-

vision is clear and unambiguous." *Ballmer,* 899 S.W.2d at 525.

Here, the parties agree no material facts are in dispute and only the interpretation of the policy is at issue. Since we interpret the policy provision in Progressive's favor, pursuant to Rule 84.14, we reverse the grant of summary judgment for Talbert and enter summary judgment in favor of Progressive on its motion for summary judgment.

GARY W. LYNCH, P.J., and NANCY STEFFEN RAHMEYER, J., concur.