**Holly TODD and Kodey Todd, by and through Next Friend Holly Todd, Appellants,**

v.

**MISSOURI UNITED SCHOOL INSURANCE COUNCIL, Respondent.**

No. SC 88020.

Supreme Court of Missouri, En Banc.

May 29, 2007.

367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979); *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

158

Seth D. Shumaker, Kirksville, for appellants.

Margaret A. Hesse, Phyleccia Reed Cole, St. Louis, for respondent.

WILLIAM RAY PRICE, JR., Judge.

Holly and Kodey Todd brought an action against the Missouri United School Insurance Council ("MUSIC") seeking payment of a $100,000 judgment entered against James Patterson, a substitute teacher in the Clark County R–1 school district ("district"). The trial court granted MUSIC's motion for summary judgment and denied the Todds' motion for summary judgment.

The Court holds that the language of the 1998 plan document issued by MUSIC is not ambiguous and that the definition of "Occurrence" bars coverage for Patterson's assault on Kodey Todd. The judgment of the trial court is affirmed.

## I. Facts

Kodey Todd was an elementary school student in the district.[1] James Patterson was a substitute teacher in the district and was assigned to teach Kodey's classroom. While on school premises and while serving in his capacity as substitute teacher, Patterson physically assaulted Kodey, grabbing him by the neck and lifting him off the ground. Patterson subsequently pleaded guilty to one count of third degree criminal assault and one count of endangering the welfare of a child.

At the time of Patterson's assault, the district was a member of MUSIC, a self-insured pool of Missouri school districts. MUSIC provided liability insurance coverage to the district under the terms of its 1998 plan document (the "policy") that was in effect at the time of Patterson's assault on Kodey.

The Todds filed suit against Patterson, the district and the acting school board members. The suit contained a claim against the district for negligent hiring and retention and a claim against the district and the board members for negligent supervision. It contained a claim for assault and battery against Patterson.

The Todds settled their claim against the district and the acting board members for $20,000. Patterson was specifically exempted from that settlement. On April 16, 2001, the Todds entered into an agreement with Patterson in which Patterson consented to the entering of a judgment against him in the amount of $100,000. The agreement further provided that the Todds would not attempt to collect any amount of the judgment from Patterson. Rather, they would seek payment from any insurance coverage in place for the benefit of the district.

The Todds brought an action against MUSIC seeking payment of the $100,000 judgment. MUSIC declined to pay on behalf of Patterson, citing policy language. The trial court found that in an action against Patterson the policy did not cover Patterson's assault of Kodey and entered judgment in favor of MUSIC. The Todds claim that the trial court erred in entering judgment in favor of MUSIC because the

1. The Court considers the record in the light most favorable to the party against whom summary judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

policy was ambiguous in that the terms "Occurrence," "Damages" and "Bodily injury" provide coverage for intentional acts of employees in one section and take the coverage away in another section. The Todds assert when read as a whole the policy provides coverage for Patterson's intentional act and that the alleged ambiguity requires the Court to construe the policy in favor of the Todds.

## II. Standard of Review

■ The decision of whether or not it is proper to grant summary judgment is a question of law that is reviewed de novo. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate when a party establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 74.04(c)(6).

## III. Insurance Law and the Policy

### A. Contract Interpretation

■ "The general rules for interpretation of other contracts apply to insurance contracts as well. The key is whether the contract language is ambiguous or unambiguous." *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 301–02 (Mo. banc 1993). When there is ambiguity in an insurance policy, the Court must interpret the policy in favor of the insured. *Bellamy v. Pacific Mut. Life Ins. Co.*, 651 S.W.2d 490, 496 (Mo. banc 1983). However, "where insurance policies are unambiguous, they will be enforced as written." *Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. banc 1991). "Whether an insurance policy is ambiguous is a question of law." *Martin v. U.S. Fidelity and Guar. Co.*, 996 S.W.2d 506, 508 (Mo. banc 1999).

### B. Elements of Insurance Policies

■ There are a number of provisions that are essential to an insurance policy. The policy must identify: the "insured," the individual or entity with the interest at risk; the "coverage" or "insuring agreement," the subject matter and the contingency insured against;[2] the "period," the dates prescribing the duration of the risk or contingency insured against; and the "limits," the amount the insurer is liable to pay for any given risk up to a specified amount. The essential terms are usually stated in abbreviated form on a declarations page.

Insurance policies also usually include a number of other categories of terms. "Definitions" are usually provided for key terms. "Conditions" are usually specified regarding the parties' respective obligations. "Exclusions" are usually stated that limit risks that otherwise might have been covered, and "Endorsements" are often made adding coverage of risks that otherwise might not have been covered.

### C. Ability to Bargain for Terms

Insurance companies may compete for business by coverage terms, by price, or by both. The parties may bargain and agree to such terms and provisions as they see fit subject only to the requirements that the contract is lawful and reasonable. *Williams v. National Cas. Co.*, 132 S.W.3d

---

**2.** Coverage may be written on an "occurrence" or a "claims made" basis. "Occurrence" coverage provides insurance for events that occur within the period of the policy regardless of whether the claim is made during or after that time period. "Claims made" coverage provides insurance for claims that first arise within the time period of the policy, although the event may have occurred at a previous time. *See Wittner, Poger, Rosenblum & Spewak, P.C. v. Bar Plan Mut. Ins. Co.*, 969 S.W.2d 749, 752 (Mo. banc 1998).

244, 246 (Mo. banc 2004). The ability to uniquely define the risks insured against and to prescribe exclusions or add endorsements allows insureds to choose the coverage they desire at the lowest possible price. *See Drug Mart Pharmacy Corp. v. American Home Products Corp.*, 472 F.Supp.2d 385 (E.D.N.Y.2007).

### D. The District's Policy

#### i. Coverage

The Policy in this case provides two separate types of coverage. The coverage language reads:

INSURING AGREEMENT

1. *COVERAGE A:* **Occurrence Coverage—Bodily Injury—Property Damage—Personal Injury.** We will pay on behalf of a **Covered Party** all **Damages** up to the **Limit of Liability** as a result of an **Occurrence** in the **Covered Territory.**

2. *COVERAGE B:* **Claims-made Coverage—School Board Legal Liability/Wrongful Acts.** We will pay on behalf of a **Covered Party** all **Damages** up to the **Limit of Liability** as a result of a **Wrongful Act** after the **Date of First Coverage** to which this Coverage Agreement applies and for which a **Claim** is first made against the **Covered Party** in the **Coverage Territory** during the **Coverage Period** and reported to **us** as soon as reasonably practicable but not later than 60 days after the end of the **Coverage Period.**

#### ii. Definitions

The relevant portions of the "Definitions" section of the policy read as follows:

DEFINITIONS

5. This **Coverage Agreement** is subject to the following definitions:

. . .

**Bodily Injury** means physical injury, sickness, disease, disability or death sustained by a person and includes any resulting mental injury, emotional distress or shock.

. . .

**Damages** means money compensation that a **Covered Party** becomes legally obligated to pay to an injured party under **Coverage A** for **Bodily Injury, Property Damage** or **Personal Injury.**

. . .

**Covered Organization** means:

a. the **Member School District;**

. . .

**Covered Party** means, whether in the singular or plural, the **Covered Organizations** and the **Covered Persons** or any of them.

**Covered Persons** means:

. . .

b. at the option of the **Member School District,** and except as otherwise provided in this definition, any employee . . . while acting at the direction or performing services for or on behalf of the **Member School District** with its knowledge and consent.

. . .

**Occurrence** means an accident during the **Coverage Period,** an event that first occurs during the **Coverage Period,** or continuous, intermittent or repeated exposure to conditions that commence during the **Coverage Period** that causes **Bodily Injury, Personal Injury** or **Property Damage** neither expected nor intended by the **Covered Party.**

. . .

For the purpose of this Policy:

 **Bodily Injury** or **Property Damage** that results from an act that is intended by the **Covered Party** . . . to cause **Bodily Injury, Personal Injury** or

Property Damage ... is not injury or damage "neither expected nor intended."

. . .

Humiliation, defamation or other **Personal Injury** that is continuous or repeated shall be considered a single **Occurrence.**

. . .

Incidents of sexual assault, sexual or physical abuse or **Sexual Molestation** against more than one victim, regardless of the number of incidents, perpetrators or injuries ... shall be treated as a single **Occurrence.**

. . .

**Personal Injury** means injury unintended by the **Insured** that a person may suffer to his reputation, character or feelings resulting from ... humiliation.

### iii. Exclusions

The relevant portions of the "Exclusions" section of the policy read as follows:

### EXCLUSIONS

19. This Coverage Agreement does not apply and **we** are not liable for:

n. liability of an Insured who knowingly committed an unlawful act; or who committed sexual assault, sexual abuse or Sexual Molestation; or who intentionally caused damage, harm or injury; to any claim arising out of any sexual assault, sexual or physical abuse or sexual molestation, involving the same individual or individuals, which initially occurred after knowledge of any actual or alleged wrongful act by said individual(s) is received by the **Member School District.**

3. The term "accident" is not defined by the policy and, therefore, is interpreted in its or-

## IV. Discussion

### A.

It is undisputed that "Coverage A" applies to the Todds' action against Patterson. "Coverage A" agrees to pay "Damages ... as a result of an Occurrence." An "Occurrence" is defined as "an accident ... that causes Bodily Injury [or] Personal Injury ... neither expected nor intended by the Covered Party." The event giving rise to this lawsuit was Patterson grabbing Kodey by the neck and lifting him off the ground. This intentional act of physical force was not an "accident." [3] Additionally, the injuries caused by this act could not have been "neither expected nor intended." Patterson's intentional assault on Kodey was not an "Occurrence" as defined by the policy and was not covered. Patterson's action was also excluded from coverage by Exclusion 19(n) that reads:

19. This Coverage Agreement does not apply and we are not liable for:

. . .

n. liability of an Insured who knowingly committed an unlawful act ... or who intentionally caused damage, harm or injury.

### B.

The Todds argue that the policy is ambiguous, should be construed in their favor and cite *Behr v. Blue Cross Hospital Service, Inc., of Missouri*, 715 S.W.2d 251 (Mo. banc 1986), for the proposition that when "a contract promises something at one point and takes it away at another there is an ambiguity." Id. at 256. Taken out of context, the language used by the Court in *Behr* may be confusing. Insurance policies customarily include definitions that limit words used in grant-

dinary sense. See 46 C.J.S. Insurance 863.

ing coverage as well as exclusions that exclude from coverage otherwise covered risks. While a broad grant of coverage in one provision that is taken away by a more limited grant in another may be contradictory and inconsistent, the use of definitions and exclusions is not necessarily contradictory or inconsistent. The principle enunciated in *Behr* is more accurately stated as follows: "Though it is the duty of the court to reconcile conflicting clauses in a policy so far as their language reasonably permits, when reconciliation fails, inconsistent provisions will be construed most favorably to the insured." [4] *Bellamy v. Pacific Mut. Life Ins. Co.*, 651 S.W.2d 490, 496 (Mo. banc 1983). Courts may not unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity when none exists. *Dieckman v. Moran*, 414 S.W.2d 320, 321 (Mo.1967). Definitions, exclusions, conditions and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable.

i.

 The Todds' first contention is that a statement on the declarations page for "School Board Legal Liability Coverage" provides "coverage for wrongful acts meaning any actual ... act ... in the discharge of duties to or on behalf of the Member School District ... [and] for a wrongful act with respect to its employees." This language, however, applies to "Coverage B" for actions brought against the district, not to "Coverage A," for actions brought against individual employees, such as Patterson.

ii.

 The Todds also argue that the language of the definitions of "Damages" and "Bodily Injury" contains no limiting language concerning intentional acts and creates coverage. The definitions of these two terms are as follows:

> **Damages** means money compensation that a **Covered Party** becomes legally obligated to pay to an injured party under **Coverage A** for **Bodily Injury, Property Damage** or **Personal Injury.**

> **Bodily Injury** means physical injury, sickness, disease, disability or death sustained by a person and includes any resulting mental injury, emotional distress or shock.

Insurance policies are read as a whole, and the risk insured against is made up of both the general insuring agreement as well as the exclusions and definitions. *See In re Estate of Carroll*, 857 S.W.2d 848, 852 (Mo.App.1993) (citing *Rafiner Elevator Works v. Michigan Mut. Liability Co.*, 392 S.W.2d 240, 241 (Mo. banc 1965)). The terms "Damages" and "Bodily Injury" must be read consistently with the definition of the term "Occurrence." The Policy language in "Coverage A" clearly states that "Damages" must be the result of an "Occurrence." An "Occurrence" is an "accident" resulting in injury "neither expected nor intended by the Covered Party."

---

**4.** In *Behr*, the Court applied the law regarding contractual ambiguities and held that a grant of coverage in one part of the insuring agreement could not be defeated by a conflicting grant of coverage in a different part of the agreement. *Behr*, 715 S.W.2d at 255–56. Likewise, *Lutsky v. Blue Cross Hospital.Service Inc., of Missouri*, 695 S.W.2d 870 (Mo. banc 1985), on which the Court in *Behr* relied, involved conflicting limits of coverage in two different policy provisions. Id. at 871 (citing *Bellamy v. Pacific Mut. Life Ins. Co.*, 651 S.W.2d 490, 496 (Mo. banc 1983)). Because both cases involved contracts containing contradictory or necessarily inconsistent language in different portions of the instrument, neither involved analysis of the effect of any exclusion.

The Todds' argument is also precluded by Exclusion 19(n) which removes coverage for "unlawful act[s]" and "intentionally caused damage, harm or injury."

### iii.

 The Todds' final argument is that the definition of the term "Occurrence" creates an ambiguity. While the Todds agree that under "Coverage A" an "Occurrence" is defined as an "accident" that causes injury "neither expected nor intended," they point to language immediately following that states:

For the purpose of this Policy:

**Bodily Injury** or **Property Damage** that results from an act that is intended by the **Covered Party** . . . to cause **Bodily Injury, Personal Injury** or **Property Damage** . . . is not injury or damage "neither expected nor intended."

. . .

Humiliation, defamation or other **Personal Injury** that is continuous or repeated shall be considered a single **Occurrence.**

. . .

Incidents of sexual assault, sexual or physical abuse or **Sexual Molestation** against more than one victim, regardless of the number of incidents, perpetrators or injuries . . . shall be treated as a single **Occurrence.**

The Todds contend that an ambiguity arises because under these additional provisions "Occurrence" appears to include incidents of intentional acts including physical abuse.

The Todds' argument in this respect fails to consider that the policy includes two coverages: "Coverage A" for individual employees and "Coverage B" that provides coverage for the district. While "Coverage A" does not provide coverage for the intentional acts of individuals, "Coverage B" provides coverage to the district for its vicarious liability for certain intentional acts of its employees.

The supplemental provisions referring to intentional torts address the situation where an employee or other person with a relationship to the district, such as Patterson, intentionally harms someone and the injured party brings a negligence action against the district, not the employee.[5] According to the plain language of the policy, in such an action the district is the Covered Party and so long as the district did not intend or expect the employee's intentional act, it will be a covered "Occurrence." There will be no coverage when, as in this case, the action is brought against the employee who committed the intentional tort. Through the above-quoted language MUSIC has merely limited its exposure when there are multiple, repeated intentional acts by the employee by treating the acts as a single "Occurrence."[6]

### V. Conclusion

The language of the MUSIC's Policy is unambiguous and shall be enforced as written. *Rodriguez v. Gen. Accident Ins.*

---

5. The district in this action has settled with the Todds for $20,000.

6. In support of this argument the Todds cite *Missouri Property and Casualty Insurance Guaranty Association v. Petrolite Corp.,* 918 S.W.2d 869 (Mo.App.1996). *Petrolite,* however, was a claim against the employer for discrimination (a "Coverage B" claim), not a claim against an employee (a "Coverage A" claim). To this extent it is consistent with this opinion. *Petrolite* is distinguishable in that it did not examine the definitions of the terms "Occurrence" and "Personal Injury" relative to the two separate coverages "A" and "B." To the extent *Petrolite* is inconsistent with this opinion, it is not to be followed.

*Co. of Am.,* 808 S.W.2d 379, 382 (Mo. banc 1991). When read as a whole, nothing in the coverage or the exclusions would give the Todds any expectation of coverage for intentional acts of James Patterson, the "Covered Party." The assault upon Kodey Todd was intentional and, therefore, not a covered "Occurrence" under the plain language of the policy.

The judgment of the trial court is affirmed.

All concur.