# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 12-1416

———————————————

Clarinet, LLC

*Plaintiff - Appellant*

v.

Essex Insurance Company

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

——————————

Submitted: November 14, 2012
Filed: April 22, 2013

——————————

Before RILEY, Chief Judge, WOLLMAN and MELLOY, Circuit Judges.

——————————

RILEY, Chief Judge.

In this diversity of citizenship case, Clarinet, LLC (Clarinet) sued Essex Insurance Company (Essex) in Missouri state court, alleging Essex wrongfully refused to pay Clarinet under a commercial general liability insurance policy. Essex removed

the case to federal court. On cross-motions for summary judgment, the district court[1] granted judgment in favor of Essex, denying Clarinet relief. Clarinet appeals. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND
### A. Factual Background
#### 1. Clarinet's Property and Loss

Clarinet, a Missouri limited liability company whose members were all Missouri citizens, is a commercial and residential real estate development company operating in St. Louis, Missouri. Essex is an insurance company incorporated under the laws of Delaware and headquartered in Virginia.

In 2005, Clarinet purchased the Switzer building, "a turn of the century masonry structure" Clarinet intended to renovate "into luxury condominiums with street level retail and commerical space." The Switzer building was a registered and protected historical building listed on the National Register of Historic Places.

On July 19, 2006, a windstorm struck the city of St. Louis. The storm seriously damaged the Switzer building, destroying parts of two exterior walls and part of the roof. Debris and bricks fell onto an adjacent bridge and electrical substation, damaging this city property. The parties dispute the extent of the damage, but Essex admits "[t]he [s]torm left large portions of the east and north walls with no support," and "exposed the building's interior to the weather, resulting in continued deterioration."

---

[1]The Honorable David D. Noce, United States Magistrate Judge for the Eastern District of Missouri, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

As an emergency stabilization effort, Clarinet installed approximately twenty aluminum bracing towers and additional braces and netting to prevent more debris from falling from the building onto adjacent property. Clarinet's stabilization "efforts continued for several months." The parties dispute whether "the building remained structurally unsound" after Clarinet's initial efforts, but Clarinet contends the building "constituted a continuing hazard and immediate threat to the public safety" in April 2007, and had to be demolished.

On or about January 23, 2007, Clarinet entered into a demolition contract with a third-party demolition company. Because the Switzer building was a designated historical landmark, Clarinet had to seek approval from various city agencies before demolishing the building. Clarinet maintains the city initially resisted Clarinet's requests to demolish the building, believing it would be preferable to preserve as much of the existing structure as possible. On June 6, 2007, the city issued a Notice of Emergency Condemnation that required Clarinet to demolish the building. The notice indicated the city concluded the property could not "be made reasonably safe without the demolition and removal of" the damaged Switzer building. Clarinet demolished the building by approximately June 18, 2007, at costs exceeding $660,000.

### 2. Insurance Policy

At all relevant times, Clarinet held a commercial general liability insurance policy from Essex relating to the Switzer building. Under the policy, Essex insured Clarinet against liability to third parties resulting from "bodily injury" or "property damage," either of which must be caused by a covered "occurrence." The insurance policy also contained several conditions and exclusions.

One such exclusion was the owned property exclusion, excluding from coverage "'[p]roperty damage' to . . . [p]roperty [Clarinet] own[ed], rent[ed], or occup[ied], including any costs or expenses incurred by [Clarinet], or any other

person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property."

Clarinet did not inform Essex of the storm damage to the Switzer building or the damage to city property until May 11, 2007. There is no evidence Essex knew of Clarinet's intention to demolish the Switzer building until after the building was demolished, and Clarinet admits it did not seek Essex's consent before proceeding with the demolition. After the demolition, Clarinet asked Essex to pay Clarinet's expenses for stabilizing and demolishing the Switzer building, in accordance with Clarinet's interpretation of the policy. Essex denied coverage and refused payment.

## B. Procedural History

Clarinet sued Essex in Missouri state court, alleging Essex had a duty under the policy to cover Clarinet's expenses in stabilizing and ultimately demolishing the Switzer building. Essex removed the case to federal court on the basis of diversity jurisdiction. See 28 U.S.C. §§ 1332(a), 1441(a). The parties filed cross-motions for summary judgment, and the district court granted judgment in favor of Essex.

## II. DISCUSSION
### A. Standard of Review and Applicable Law

We review de novo the district court's grant of summary judgment, construing all facts and making all reasonable inferences in favor of the non-moving party. See Washington v. Countrywide Home Loans, Inc., 655 F.3d 869, 871-72 (8th Cir. 2011). We will affirm summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The parties agree Missouri law applies in this diversity case. See HealthEast Bethesda Hosp. v. United Commercial Travelers of Am., 596 F.3d 986, 987 (8th Cir. 2010). Under Missouri law, courts generally give the terms of an insurance policy

their ordinary meaning. See Farmland Indus., Inc. v. Republic Ins. Co., 941 S.W.2d 505, 508 (Mo. 1997) (en banc). We construe ambiguities in policies in favor of the insured and against the insurance company. See Todd v. Mo. United Sch. Ins. Council, 223 S.W.3d 156, 160 (Mo. 2007) (en banc.). A court may not create an ambiguity where none exists, and "must enforce clear and unambiguous" policy exclusions. See id. at 163. The insured has the burden to prove an event is covered under the policy, and the insurer has the burden to prove an exclusion applies to an otherwise covered event. See State Farm Fire & Cas. Co. v. D.T.S., 867 S.W.2d 642, 644 (Mo. Ct. App. 1993).

### B.     Owned Property Exclusion

The owned property exclusion plainly bars coverage in this case. The exclusion provides the policy does not cover damage to Clarinet's property, "including any costs or expenses incurred . . . for repair, replacement, . . . or maintenance of such property for any reason, *including prevention of injury to a person or damage to another's property*." (Emphasis added). Clarinet's entire argument is based on the premise that Essex must cover the expenses Clarinet incurred in stabilizing and ultimately demolishing the Switzer building because these expenses were necessary to prevent further injury to persons and property. Yet, the policy explicitly excludes such expenses. Clarinet's argument therefore fails.

Citing a case interpreting a similar provision under New York law, Clarinet argues Essex is responsible to cover any of Clarinet's expenses that were "necessary to stop ongoing and imminent damage to property belonging to another." Castle Vill. Owners Corp. v. Greater N.Y. Mut. Ins. Co., 64 A.D.3d 44, 50 (N.Y. App. Div. 2009). Clarinet contends Castle Village also describes the law in Missouri, but cites no Missouri case in support of its argument.[2]  Under Missouri law, "'where [an]

---

[2]Our decision in Slay Warehousing Co. v. Reliance Ins. Co., 471 F.2d 1364 (8th Cir. 1973), discussed below, is not to the contrary. The policy in Slay Warehousing

insurance polic[y is] unambiguous, [it] will be enforced as written.'" Todd, 223 S.W.3d at 160 (quoting Rodriguez v. Gen. Accident Ins. Co. of Am., 808 S.W.2d 379, 382 (Mo. 1991) (en banc)). The Essex policy patently excludes such repairs, even when undertaken to prevent harm to third parties or property. We will not ignore the plain language of the policy.

Clarinet also relies upon Slay Warehousing Co. v. Reliance Ins. Co., 471 F.2d 1364 (8th Cir. 1973), an Eighth Circuit case presumably applying Missouri law. See id. at 1366 n.3. In Slay Warehousing, "[t]he primary issue [was] whether the insurer [was] liable [under an inland marine policy warehousemen endorsement[3]] for expenses incurred by [the insured] in taking reasonable means to protect chemicals stored in [the insured's] warehouse from damage due to exposure following the collapse of [a] warehouse wall." Id. at 1365. The policy at issue expressly required the insured to "take all reasonable means to protect, safeguard and salvage the [covered] property." Id. at 1365. We held that the policy obligated the insurer to pay, recognizing "the obligation [of the insurer] to pay the expenses of protecting the exposed [third party] property may arise from either the insurance agreement itself, or an implied duty under the policy contract based upon general principles of law and equity." Id. at 1367-68 (internal citation omitted).

Slay Warehousing provides no help to Clarinet. Clarinet does not identify any similar express language in the Essex policy, as is in the policy in Slay Warehousing, requiring Clarinet to mitigate or prevent damages. Even assuming Clarinet had an implied duty to mitigate or prevent damages, the Essex policy expressly placed the

_____

did not have an owned property exclusion expressly making the insured liable for repairs to the insured's own property. See infra. at 6-7 & n.3.

[3]The agreement in Slay Warehousing required the insurance company to "pay on behalf of the [in]sured all sums which the [in]sured shall become legally obligated to pay by reason of liability imposed." Id. at 1366.

burden of such costs on Clarinet. <u>Cf.</u> <u>Die-Cutting Diversified, Inc. v. United Nat'l Ins. Co.</u>, 353 F. Supp. 2d 1053, 1058 (E.D. Mo. 2004) (distinguishing <u>Slay Warehousing</u> because the policy in <u>Slay Warehousing</u> expressly required the insured to mitigate damages, and finding the insurer was not required to cover the insured's mitigation expenses absent an express contractual duty to mitigate).

Because the owned property exclusion bars coverage in this case, the district court properly granted summary judgment to Essex and denied relief to Clarinet.[4]

## III.    CONCLUSION

Anticipating the Supreme Court of Missouri's interpretation, for the reasons stated above, we affirm.

_____

---

[4]Because we hold the owned property exclusion applies, we need not consider the effect of any other policy condition or exclusion, the city's demolition order, or whether the storm was an "occurrence" covered under the policy.