James L. GUTHRIE,
Plaintiff/Appellant,

v.

HIDDEN VALLEY GOLF AND SKI, INC., Defendant/Respondent,

and

Peak Resorts, Inc.,
Defendant/Respondent.

No. ED 98704.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 21, 2013.

Application for Transfer to Supreme Court Denied July 24, 2013.

Application for Transfer Denied Oct. 1, 2013.

---

Thomas Cicardi Devoto, St. Louis, MO, for appellant.

Thomas Joseph Magee, Margaret Lally Fowler, Co–Counsel, Heplerbroom, LLC, St. Louis, MO, for respondent.

Before KATHIANNE KNAUP CRANE, P.J., MARY K. HOFF, J., and LISA S. VAN AMBURG, J.

## OPINION

MARY K. HOFF, Judge.

James L. Guthrie (Guthrie) appeals from the trial court's entry of summary judgment in favor of Hidden Valley Golf and

Ski, Inc., (Hidden Valley) and Peak Resorts, Inc., (Peak Resorts) (collectively referred to as Defendants) on Guthrie's claim for personal injuries following an accident while snow tubing on Defendants' property. We affirm.

*Factual and Procedural Background*

Defendants owned and operated a golf and ski resort in St. Louis County. The resort included the Polar Plunge Snow Tubing run. Before participating in Polar Plunge Snow Tubing, patrons of the resort were required to purchase a ticket and to read and sign a contract (the Contract) acknowledging the risk of injury posed and agreeing not to sue Defendants if injury occurred. The Contract specifically provided

POLAR PLUNGE SNOW TUBING

HIDDEN VALLEY SKI–TUBE–RIDE AREA, WILDWOOD, MISSOURI

ACKNOWLEDGMENT OF RISK AND AGREEMENT NOT TO SUE

THIS IS A CONTRACT! \*\*\*\*\*\*\*\*\*\* PLEASE READ!

1. I understand and acknowledge that snow tubing is a dangerous, risky sport and that there are inherent and other risks associated with the sport and that all of these risks can cause serious and even fatal injuries.

2. I understand that part of the thrill, excitement and risks of snow tubing is that the snow tubes all end up in a common, run-out area at various times and speeds and that is my responsibility to try to avoid hitting another snow tuber, and it is also my responsibility to try to avoid being hit by another snow tuber, but that notwithstanding these efforts by myself and other snow tubers, there is a risk of collisions.

3. I acknowledge that the risks of snow tubing include, but are not limited to, the following:

● Variations in the steepness and configuration of the snow tubing chutes and run-out area;

● Variations in the surface upon which snow tubing is conducted, which can vary from wet, slushy conditions to hard packed, icy conditions and everything in between;

● Fence and/or barriers at or along portions of the snow tubing area, the absence of such fence and/or barriers and the inability of fences and/or barriers to prevent or reduce injury;

● Changes in the speed at which snow tubers travel depending on surface conditions, the weight of snow tubers and the inter-linking of snow tubers together to go down the snow tube runs;

● The chance that a patron can fall out, be thrown out or otherwise leave the snow tube;

● The chance that a snow tube can go from one run to another run, regardless of whether or not there is a barrier between runs, and the chance that a snow tube can go beyond the run-out area;

● The chance that a snow tube can go up the run-out hill and then slide into the general run-out area;

● Collisions in the run-out area and other locations of the snow tubing facility, with such collisions happening between snow tubes, between a snow tube and another patron, between a snow tube and a snow tubing facility attendant, between a snow tubing patron who may or may not be in or on a snow tube at the time of the collision and other sorts of collisions; collisions with

fixed objects, obstacles or structures located within or outside of the snow tube facility;

- The use of the snow tubing carpet lift or tow, including falling out of

4. I also acknowledge and understand that I am accepting AS IS the snow tube and any other equipment involved with the snow tubing activity, including lifts and tows, and further acknowledge and understand that NO WARRANTIES are being extended to me with respect to any aspect of the snow tubing facility.

5. I agree and understand that snow tubing is a purely, voluntary, recreational activity and that if I am not willing to acknowledge the risk and agree not to sue, I should not go snow tubing.

6. I agree to allow the use of my image or likeness incidental in any photograph, live recorded video display or other transmission or reproduction of the event in any form to which this agreement admits me.

7. IN CONSIDERATION OF THE ABOVE AND OF BEING ALLOWED TO PA[R]TICIPATE IN THE SPORT OF SNOWTUBING, I AGREE THAT I WILL NOT SUE AND WILL RELEASE FROM ANY AND ALL LIABILITY, HIDDEN VALLEY GOLF AND SKI, INC. OR PEAK RESORTS, INC., THEIR OWNERS, OPERATIONS, LESSORS, LESSEES, OFFICERS, AGENTS, AND EMPLOYEES IF I OR ANY MEMBER OF MY FAMILY IS INJURED WHILE USING ANY OF THE SNOWTUBING FACILITIES OR WHILE BEING PRESENT AT THE FACILITIES, EVEN IF I CONTEND THAT SUCH INJURIES ARE THE RESULT OF NEGLIGENCE ON THE PART [OF] THE SNOWTUBING FACILITY.

8. I further agree that I WILL INDEMNIFY AND HOLD HARMLESS HIDDEN VALLEY GOLF AND SKI, INC. AND PEAK RESORTS, INC. THEIR OWNERS, OPERATORS, LESSORS, LESSEES, OFFICERS, AGENTS, AND EMPLOYEES from any loss, liability, damages or cost of any kind that it may incur as the result of any injury to myself or to any member of my family or to any person for whom I am explaining that meaning of this agreement, even if it is contended that any such injury was caused by the negligence of the part of the snow tubing facility.

9. I understand and agree that this Agreement is governed by the laws of the State of Missouri. I further agree that if any part of this Agreement is determined to be unenforceable, all other parts shall be given full force and effect.

10. I have read and understand the foregoing Acknowledgement of Risks and Agreement Not to Sue. I understand by reading this that I may be giving up the rights of my child and spouse to sue as well as giving up my own right to sue.

(Emphasis in original.)

On January 29, 2011, Guthrie purchased a ticket for Polar Plunge Snow Tubing and was given the Contract. Guthrie printed his name and the date at the bottom of the Contract in the spaces designated "Printed Name" and "Date." Guthrie signed his name at the bottom of the Contract in the space designated "Signature." Guthrie's ticket allowed him to participate in Polar Plunge Snow Tubing for two hours. Guthrie then began descending the Polar Plunge Snow Tubing hill. When Guthrie

had approximately 30 minutes left of his allotted two hours, he and his friends, Zach and Skyler, began descending the hill together with all three of them sitting on their snow tubes and facing forward. At some point during the descent, Skyler became separated from Guthrie and Zach. As Guthrie and Zach slowed and stopped in the run-off area of the hill, Skyler slid into Guthrie's and Zach's tubes and pushed them over, breaking Guthrie's foot.

Guthrie subsequently filed his petition for damages against Defendants alleging that he had sustained serious bodily injuries and damages as result of Defendants' negligent maintenance, operation, and control of the Polar Plunge Snow Tubing area. Defendants thereafter filed their answer and affirmative defenses alleging that Guthrie assumed the risk of injury by participating in Polar Plunge Snow Tubing, that the conditions of the snow tubing run were open and obvious and inherent to the sport, and that Guthrie had signed the Contract releasing Defendants from any and all liability, including injuries caused by Defendants' or their employees' negligence.

Defendants thereafter filed their Motion for Summary Judgment, Memorandum of Law in Support of Their Motion for Summary Judgment, Statement of Uncontroverted Material Facts in Support of Their Motion for Summary Judgment, and exhibits. Defendants alleged that no material facts were in dispute. Guthrie had sustained injury after he descended the Polar Plunge Snow Tubing hill, came to a stop, and Skyler slid into Guthrie, causing Guthrie's foot to break. Defendants further alleged that they were entitled to judgment as a matter of law because Guthrie had released Defendants of any and all liability given that Guthrie had received the Contract at the time he purchased his ticket for the Polar Plunge Snow Tubing

and had signed it before participating in the Polar Plunge Snow Tubing. Defendants alleged that the language of the Contract was clear, unambiguous, unmistakable, and conspicuous and, thus, should be enforced.

Guthrie subsequently filed his Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, his Response to Defendants' Statement of Uncontroverted Material Facts in Support of Their Motion for Summary Judgment, his Statement of Controverted Facts, and exhibits. Guthrie alleged that the language of the Contract was "barely bolded and [was] not obvious to [Guthrie]." Guthrie further alleged that he did not read the Contract in its entirety but "merely read the top language and the so-called bold language," then skimmed to the bottom of the page where he signed it. Guthrie alleged that the Contract was "susceptible to multiple different interpretations by lay people," including a reasonable interpretation that Guthrie would not be excluded from being able to sue for Defendants' negligence in operating the Polar Plunge Snow Tubing.

Following a hearing in which the parties argued their respective positions on Defendants' motion for summary judgment, the trial court entered judgment in favor of Defendants, finding that no material facts were in dispute and that Defendants were entitled to judgment as a matter of law. This appeal followed. Additional facts will be discussed as necessary to our analysis of the issues on appeal

## Standard of Review

Whether the trial court's grant of summary judgment was proper is a question of law that we review *de novo*. *Todd v. Missouri United School Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007); *ITT Commercial Fin. Corp. v. Mid–America*

*Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is proper when the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Rule 74.04(c); *Todd*, 223 S.W.3d at 160. Where the defending party is the movant, it may establish a right to judgment by showing: 1) facts negating any one of the non-movant's elements facts; 2) that the non-movant, after an adequate period of discovery, has not been able and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the non-movant's elements; or 3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *ITT*, 854 S.W.2d at 381. We review the record in the light most favorable to the party against whom summary judgment was entered. *ITT*, 854 S.W.2d at 376.

### Discussion

Guthrie presents five points on appeal. However, because our analysis of Guthrie's first and second points are dispositive of the appeal, we need only address those points.[1] In his first and second points, Guthrie essentially claims the trial court erred in granting summary judgment for Defendants because the court misapplied the law in that (1) the Contract's language is susceptible to two separate constructions and, therefore, is ambiguous, and such ambiguity must be resolved in favor of Guthrie and not Hidden Valley; and (2) the Contract's exculpatory clause language did not contain the word "negligence" and was not sufficiently bold and obvious.

■ "Whether a release is ambiguous is a question of law." *Holmes v. Multimedia KSDK, Inc.*, 395 S.W.3d 557, 559 (Mo.

App. E.D.2013). "Interpretation of a release or settlement agreement is governed by the same principles as any other contract." *Holmes*, 395 S.W.3d at 559. *quoting Mid Rivers Mall, L.L.C. v. McManmon*, 37 S.W.3d 253, 255 (Mo.App. E.D. 2000). Absent fraud, accident, mistake, or duress, and unless the terms of the agreement are themselves ambiguous, we will not consider extrinsic evidence contradicting the terms of the agreement. *Holmes*, 395 S.W.3d at 559. "Contract terms are ambiguous only if the language may given more than one reasonable interpretation." *Id.* (internal quotation omitted). Just because parties disagree over the meaning of a contract does not make it ambiguous. *Id.* We focus on the plain language of the contract rather than speculating on the intent of the parties. *Id.*

■ Although exculpatory clauses in contracts releasing one party from its own future negligence are disfavored, such clauses are not prohibited as against public policy. *Alack v. Vic Tanny International Inc.*, 923 S.W.2d 330, 334 (Mo. banc 1996); *Milligan v. Chesterfield Village GP, LLC*, 239 S.W.3d 613, 616 (Mo.App. S.D.2007). "It is a 'well-established rule of construction that a contract provision exempting one from liability for his or her negligence will never be implied but must be clearly and explicitly stated.'" *Alack*, 923 S.W.2d at 334, *quoting Poslosky v. Firestone Tire and Rubber Co.*, 349 S.W.2d 847, 850 (Mo. 1961). Furthermore, contracts exonerating one party from acts of future negligence are to be "strictly construed against the party claiming the benefit of the contract." *Id.* at 336. Additionally, clear, unambiguous, unmistakable, and conspicuous language is required to release a party from his or her future negligence. *Abbott*

---

1. Given the standing legal precedent, we decline to review Guthrie's public policy and due process points and find any common carrier analysis not applicable to snow tubing.

*v. Epic Landscape Productions, L.C.,* 361 S.W.3d 13, 17 (Mo.App. W.D.2011), *citing Alack,* 923 S.W.2d at 337. Exculpatory language must effectively notify an individual that he is releasing another party from claims arising from the other party's own negligence. *Abbott,* 361 S.W.3d at 17, *quoting Alack,* 923 S.W.2d at 337. "There must be no doubt that a reasonable person agreeing to an exculpatory clause actually understands what future claims he or she is waiving." *Abbott,* 361 S.W.3d at 17, *quoting Alack,* 923 S.W.2d at 337–38. The word "negligence" must be clearly stated in a release of future negligence. *Holmes,* 395 S.W.3d at 561.

■■■ Here, no genuine issue of material facts exists. The Contract's language was not ambiguous and the exculpatory clause was sufficiently bold and obvious.

First, the Contract clearly informed Guthrie in plain language that he was entering into a contract and agreeing not to sue Defendants. The Contract's title stated, in plain language, that it was, in fact, an "ACKNOWLEDGMENT OF RISK AND AGREEMENT NOT SUE." Significantly, Paragraph 5 of the Contract stated that participating in Polar Plunge Snow Tubing is a "purely, voluntary, recreational activity" and that if an individual is "not willing to acknowledge the risk and agree not to sue" Defendants, the individual "should not go snow tubing." Furthermore, Paragraph 7, the exculpatory clause, clearly included the word "negligence." Paragraph 7 explicitly stated that, in exchange for being allowed to participate in Polar Plunge Snow Tubing, participants would release Defendants for "any and all liability" due to injury that might result from participation, even if a participant's injuries were "the result of negligence on the part of [Defendants]." The language of the Contract's title and terms could have only one reasonable interpretation:

an individual wishing to participate in Polar Plunge Snow Tubing was required to first agree to the terms of the Contract, which provided that the individual would not sue Defendants if he were injured while participating in Polar Plunge Snow Tubing. Thus, the Contract notified Guthrie that he was releasing Defendants from any future claims Guthrie might have against Defendants, even if those claims were based on Defendants' negligence.

Second, the Contract's exculpatory language was sufficiently conspicuous. The entire Contract appeared on a single page, and the Contract contained only 10 paragraphs. The title of the Contract, which stated that Guthrie was acknowledging the risk of snow tubing and agreeing not to sue Defendants, was printed in all capital letters at the top of the page in large, readable type. The exculpatory clause in Paragraph 7 was printed approximately two-thirds from the top of the page and was visually distinct from other paragraphs in the Contract because it was printed in capitalized, bold print. Thus, the Contract's exculpatory language was conspicuous and obvious to Guthrie and sufficient to uphold Guthrie's agreement not to sue Defendants.

The trial court did not err in granting summary judgment in favor of Defendants. Point denied.

### Conclusion

The trial court's grant of summary judgment is affirmed.

KATHIANNE KNAUP CRANE, Presiding Judge, concurs.

LISA S. VAN AMBURG, Judge, dissents in separate opinion.

LISA S. VAN AMBURG, Judge.

I respectfully dissent because I believe the exculpatory language in this release is unclear and inconspicuous.

A photocopy of the actual release Mr. Guthrie signed is appended hereto. Although the title clearly states the release is an agreement not to sue and a contract, nowhere in the title is there a reference to which parties may not be sued. And except for the title, which notably lacks any reference to the drafter's own negligence, the entire release is printed in the smallest, single-spaced standard font (resembling Times New Roman's smallest size 8). The first six paragraphs, particularly paragraph 3, set out a litany of unfortunate events that can occur while snow-tubing, which events cannot reasonably be attributable to Hidden Valley's and Peak Resorts' own negligence. This release is drafted in such a way that a customer might erroneously conclude that by sign-ing the release, s/he is releasing the right to sue persons involved in any events such as those described in paragraph 3. In fact, Mr. Guthrie testified in his deposition that this was his conclusion and he failed to understand he was releasing Hidden Valley and Peak Resorts' own negligence.

It is not until later in the single-spaced, small font document at the end of Paragraph 7 that the customer reads that s/he is releasing Hidden Valley's and Peak Resorts' *own negligence.* The pertinent phrase does not stand out because the *whole paragraph* is capitalized and single-spaced. Paragraph 8 suffers a similar deficiency.

If as *Alack* teaches, exculpatory clauses in contracts releasing a party from its own future negligence are disfavored under Missouri law, then such releases should be presented to the reader in a clear and conspicuous manner.[1] I dissent because in my opinion, this release fails that test.

---

1. See dissents in *Alack v. Vic Tanny Intern. of Missouri, Inc.,* 923 S.W.2d 330, 339–340 (Mo. banc 1996), *Warren v. Paragon Technologies Group, Inc.,* 950 S.W.2d 844, 848–850 (Mo. banc 1997).

POLAR PLUNGE SNOW TUBING
HIDDEN VALLEY SKI-TUBE-RIDE AREA, WILDWOOD, MISSOURI
ACKNOWLEDGMENT OF RISK AND AGREEMENT NOT TO SUE
THIS IS A CONTRACT! ********* PLEASE READ!

1. I understand and acknowledge that snow tubing is a dangerous, risky sport and that there are inherent and other risks associated with the sport and that all of these risks can cause serious and even fatal injuries.

2. I understand that part of the thrill, excitement and risks of snow tubing is that the snow tubes all end up in a common, run-out area at various times and speeds and that is my responsibility to try to avoid hitting another snow tuber, and it is also my responsibility to try to avoid being hit by another snow tuber, but that notwithstanding these efforts by myself and other snow tubers, there is a risk of collisions.

3. I acknowledge that the risks of snow tubing include, but are not limited to, the following:
   - Variations in the steepness and configuration of the snow tubing chutes and run-out area;
   - Variations in the surface upon which snow tubing is conducted, which can vary from wet, slushy conditions to hard packed, icy conditions and everything in between;
   - Fence and/or barriers at or along portions of the snow tubing area, the absence of such fence and/or barriers and the inability of fences and/or barriers to prevent or reduce injury;
   - Changes in the speed at which snow tubers travel depending on surface conditions, the weight of snow tubers and the inter-linking of snow tubers together to go down the snow tube runs;
   - The chance that a patron can fall out, be thrown out or otherwise leave the snow tube;
   - The chance that a snow tube can go from one run to another run, regardless of whether or not there is a barrier between runs, and the chance that a snow tube can go beyond the run-out area;
   - The chance that a snow tube can go up the run-out hill and then slide into the general run-out area;
   - Collisions in the run-out area and other locations of the snow tubing facility, with such collisions happening between snow tubes, between a snow tube and another patron, between a snow tube and a snow tubing facility attendant, between a snow tubing patron who may or may not be in or on a snow tube at the time of the collision and other sorts of collisions; collisions with fixed objects, obstacles or structures located within or outside of the snow tube facility;
   - The use of the snow tubing carpet lift or tow, including falling out of a tube, slipping backwards, becoming entangled with equipment, railing and fencing, slipping and falling on the carpet lift and/or the adjacent deck and other risks.

4. I also acknowledge and understand that I am accepting AS IS the snow tube and any other equipment involved with the snow tubing activity, including lifts and tows, and further acknowledge and understand that NO WARRANTIES are being extended to me with respect to any aspect of the snow tubing facility.

5. I agree and understand that snow tubing is a purely, voluntary, recreational activity and that if I am not willing to acknowledge the risk and agree not to sue, I should not go snow tubing.

6. I agree to allow the use of my image or likeness incidental in any photograph, live recorded video display or other transmission or reproduction of the event in any form to which this agreement admits me.

7. IN CONSIDERATION OF THE ABOVE AND OF BEING ALLOWED TO PATICIPATE IN THE SPORT OF SNOWTUBING, I AGREE THAT I WILL NOT SUE AND WILL RELEASE FROM ANY AND ALL LIABILITY, HIDDEN VALLEY GOLF AND SKI, INC, OR PEAK RESORTS, INC., THEIR OWNERS, OPERATIONS, LESSORS, LESSEES, OFFICERS, AGENTS, AND EMPLOYEES IF I OR ANY MEMBER OF MY FAMILY IS INJURED WHILE USING ANY OF THE SNOWTUBING FACILITIES OR WHILE BEING PRESENT AT THE FACILITIES, EVEN IF I CONTEND THAT SUCH INJURIES ARE THE RESULT OF NEGLIGENCE ON THE PART OT THE SNOWTUBING FACILITY.

8. I further agree that I WILL INDEMNIFY AND HOLD HARMLESS HIDDEN VALLEY GOLF AND SKI, INC, AND PEAK RESORTS, INC. THEIR OWNERS, OPERATORS, LESSORS, LESSEES, OFFICERS, AGENTS, AND EMPLOYEES from any loss, liability, damages or cost of any kind that it may incur as the result of any injury to myself or to any member of my family or to any person for whom I am explaining that meaning of this agreement, even if it is contended that any such injury was caused by the negligence on the part of the snow tubing facility.

9. I understand and agree that this Agreement is governed by the laws of the State of Missouri, I further agree that if any part of this Agreement is determined to be unforceable, all other parts shall be given full force and effect.

10. I have read and understand the foregoing Acknowledgement of Risks and Agreement Not to Sue. I understand by reading this that I may be giving up the rights of my child and spouse to sue as well as giving up my own right to sue.

Printed Name _James Guthrie_     Date _1-29-11_

Signature _____

EXHIBIT
C

EXHIBIT
D
J. Guthrie 3/7/12

A8