

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | |
|---|---|
| D.M.A. by Next Friend, TINA PARSLEY-HUGHES, | ) No. ED102866 |
| Appellant, | ) |
| vs. | ) Appeal from the Circuit Court of ) St. Charles County |
| MICHAEL HUNGERFORD, | ) |
| Defendant, | ) Honorable Jon A. Cunningham |
| and | ) |
| MISSOURI UNITED SCHOOL INSURANCE COUNCIL, | ) |
| | ) Filed: February 23, 2016 |
| Respondent. | ) |

## Introduction

In this insurance coverage dispute, D.M.A. (Plaintiff) appeals the Circuit Court of St. Charles County's order and judgment granting the Missouri United School Insurance Counsel's (MUSIC) motion for summary judgment and denying Plaintiff's motion for summary judgment. In a single point on appeal, Plaintiff argues that the trial court erred in granting MUSIC's motion for summary judgment because, contrary to the trial court's interpretation, the policy covered sexual misconduct. We affirm.

**Factual Background**

Michael Hungerford was a special education teacher at the Forsyth R-III School District (the District). In 2008, he molested one of his students, D.M.A. (Plaintiff). Hungerford was convicted of first-degree child molestation and sentenced to ten years' imprisonment.

Plaintiff brought a civil action against Hungerford, the District and two administrators. The District had an insurance policy—"Combined Liability Coverage Agreement"—through MUSIC. Pursuant to the insurance policy (the Policy), MUSIC provided a defense to the District, the administrators, and Hungerford in his official capacity. However, MUSIC did not defend Hungerford for Plaintiff's claims against him as an individual. Plaintiff entered into a settlement agreement with the District and the administrators. Plaintiff then amended her petition against Hungerford, pleading a claim for "sexual misconduct." Hungerford did not answer the petition and the trial court entered a default judgment against him for $10,000,000.

Subsequently, Plaintiff filed a separate action to garnish insurance funds from MUSIC to satisfy her $10,000,000 default judgment against Hungerford. Both parties filed motions for summary judgment. The trial court granted MUSIC's motion. In its order, the trial court concluded that: 1) Hungerford was not a "Covered Person" under the policy; 2) Hungerford's intentional sexual molestation of Plaintiff was not an "Occurrence" under the policy; 3) Hungerford's intentional wrongful acts were excluded under the insurance plan; 4) Missouri precedent excludes liability coverage for teachers who assault students; and 5) there was no ambiguity in the insurance policy regarding whether sexual molestation is covered. Plaintiff appeals.

**Standard of Review**

The interpretation of an insurance policy, and the determination whether coverage and exclusion provisions are ambiguous, are questions of law that this Court reviews de novo. *Seeck v.*

*Geico Gen. Ins. Co.,* 212 S.W.3d 129, 132 (Mo. banc 2007). This Court also applies a de novo standard of review to a trial court's grant of summary judgment. *Am. Std. Ins. Co. v. Hargrave,* 34 S.W.3d 88, 89 (Mo. banc 2000). "An order of summary judgment may be affirmed under any theory that is supported by the record." *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010) (citation omitted). We review the record in the light most favorable to the party against whom summary judgment was granted. *Woodling v. Polk*, 473 S.W.3d 233, 235 (Mo. App. E.D. 2015).

**Discussion**

In the present case, Plaintiff claims that the trial court erred in granting MUSIC's motion for summary judgment. Specifically, Plaintiff argues that Hungerford is a "Covered Person" under the Policy; 2) sexual misconduct is an "Occurrence" under the Policy; 3) the Policy is ambiguous; 4) the exclusions do not cure the policy of its ambiguity; and 5) *Todd v. Missouri United School Ins. Council*, 223 S.W.3d 156 (Mo. banc 2007) is not controlling precedent.[1] MUSIC counters that Hungerford is not a "Covered Person;" that Hungerford's sexual molestation of Plaintiff is not an "Occurrence;" that the Policy is unambiguous because the Policy expressly excludes Hungerford's sexual molestation of Plaintiff from the scope of coverage; and that *Todd* is controlling precedent. MUSIC further argues that coverage for Plaintiff's claims against Hungerford would violate public policy.

The general rules of contract interpretation apply to insurance contracts. When interpreting insurance contracts, we must discern whether the language is ambiguous or unambiguous. *Peters v.*

---

[1] Additionally, Plaintiff argues that the default judgment against Hungerford binds MUSIC because Plaintiff alleged "Sexual Misconduct," which is a covered occurrence under the Policy. Plaintiff contends that MUSIC had a duty to defend Hungerford, failed to do so, and is bound by the underlying default judgment. This argument fails given the Missouri Supreme Court's holding in *James v. Paul*, 49 S.W.3d 678 (Mo. banc 2001). That case, factually similar to the present case, dealt with a criminal conviction establishing intentional conduct, followed by a tort action in which the trial court concluded that the defendant "did not intend or expect for [the victim] to be injured." *Id.* at 680-81. Thereafter, the plaintiff filed an equitable garnishment action, alleging that the underlying civil judgment established coverage under the defendant's insurance policy. *Id.* at 681. The Supreme Court held that the defendant's guilty plea established intentional conduct and, therefore, the insurance company "justifiably relied on the prior . . . determination in concluding it had no coverage and, thus, no duty to defend." *Id.* at 689. Here, MUSIC was entitled to rely on Hungerford's previous conviction for first-degree molestation, establishing that Hungerford acted intentionally. Accordingly, the default judgment does not bind MUSIC and Plaintiff's argument is without merit.

*Employers Mut. Cas. Co.*, 853 S.W.2d 300, 301-02 (Mo. banc 1993). If the policy is ambiguous, we must construe the policy in favor of the insured. *Todd*, 223 S.W.3d at 160. However, if it is unambiguous, we enforce the policy as written. *Id.*

The MUSIC policy (the Policy) provides a "Program Coverage Summary" at the beginning of the policy document. The summary page lists "Sexual Misconduct Coverage" under "General Liability" coverages. Further in the document, the Policy separates two types of coverage, Coverage A and Coverage B. The language of the policy is as follows:[2]

<u>Coverage Agreement</u>

1.   <u>COVERAGE A</u>: **Occurrence Coverage – Bodily Injury – Property Damage – Personal Injury.** We will pay on behalf of a Covered Party all Damages up to the Limit of Liability as a result of an Occurrence in the Coverage Territory.

2.   <u>COVERAGE B</u>: **Claims-Made Coverage – School Board Legal Liability/Wrongful Acts.** We will pay on behalf of a Covered Party all Damages up to the Limit of Liability as a result of a Wrongful Act after the Date of First Coverage to which this Coverage Agreement applies and for which a Claim is first made against the Covered Party in the Coverage Territory during the Coverage Period and reported to us as soon as reasonably practicable but not later than 60 days after the end of the Coverage Period.

The Policy also provides various definitions. For purposes of the present case, the relevant definitions are as follows:

**Covered Party** means, whether in the singular or plural, the Covered Organizations and the Covered Persons or any of them.

**Covered Persons** means:
. . .
b. at the option of the Member, and except as otherwise provided in this definition, any employee, student teacher, teaching assistant or uncompensated volunteer while acting at the direction of or performing services for or on behalf of the Member with its knowledge and consent[.]

\*      \*      \*

**Member** means the school district, community college, or other educational entity.

---

[2] The formatting of the original policy puts certain terms in bold, as we have duplicated here.

**Occurrence** means an accident during the **Coverage Period**, an event that first occurs during the **Coverage Period**, or continuous, intermittent or repeated exposure to conditions that commence during the **Coverage Period** that causes **Bodily Injury**, **Personal Injury** or **Property Damage** neither expected nor intended by the **Covered Party**.

\* \* \*

For the purpose of this Document:
      **Bodily Injury** or **Property Damage** that results from an act that is intended by the **Covered Party**, or that can be expected from the standpoint of a reasonable person, to cause **Bodily Injury**, **Personal Injury** or **Property Damage**, even if the injury or damage is of a different degree or type than actually intended or expected, is not injury or damage "neither expected nor intended."

\* \* \*

**Sexual Molestation** means injury resulting from illegal or otherwise wrongful sexual conduct with a minor child.

The Policy also includes some relevant exclusions. Under Paragraph 19, the Policy states that MUSIC is not liable for:

o.     any fraudulent, dishonest, malicious, criminal or intentional wrongful act or omission by a **Covered Party**.

p.     liability of any **Covered Person** who knowingly committed any unlawful act; or who committed sexual assault, sexual or physical abuse or **Sexual Molestation**; or who intentionally caused damage, harm or injury; or any liability for sexual assault, sexual or physical abuse or **Sexual Molestation**, involving the same individual, that initially occurred after the **Member** had knowledge of any actual or alleged wrongful act by the individual.

Here, the parties dispute whether the *Todd* case is instructive as to whether Hungerford's sexual molestation of Plaintiff is an "Occurrence" under the Policy. The insurance policy at issue in *Todd* was the same as the Policy in the present case. We conclude that *Todd* is both instructive and controlling precedent.

In *Todd*, a substitute teacher physically assaulted a student by "grabbing him by the neck and lifting him off the ground." 223 S.W.3d at 159. The teacher pleaded guilty to third-degree criminal

5

assault and endangering the welfare of a child. *Id.* The student's family filed suit against the teacher, the school district, and school board members. *Id.* The family settled with the teacher, and per the terms of the settlement, sought $100,000 from MUSIC to satisfy the judgment. *Id.* MUSIC disputed coverage and the trial court concluded that the policy did not cover the teacher's assault of the student. *Id.* at 159-60. The student appealed. *Id.* The Missouri Supreme Court held that "[w]hen read as a whole, nothing in the coverage or the exclusions would give the [student] any expectation of coverage for intentional acts of [the teacher], the 'Covered Party.'" *Id.* at 165. The Court also concluded that the teacher's intentional assault of the student was not a covered "Occurrence" under the plain language of the policy. *Id.* In addressing the student's argument that definition of the term of "Occurrence" was ambiguous, the Court stated:

> The [student's] argument . . . fails to consider that the policy includes two coverages: "Coverage A" for individual employees and "Coverage B" that provides coverage for the district. While "Coverage A" does not provide coverage for the intentional acts of individuals, "Coverage B" provides coverage to the district for its vicarious liability for certain intentional acts of its employees.
> The supplemental provisions referring to intentional torts address the situation where an employee or other person with a relationship to the district, such as [the substitute teacher], intentionally harms someone and the injured party brings a negligence action against the district, not the employee. According to the plain language of the policy, in such an action the district is the Covered Party and so long as the district did not intend or expect the employee's intentional act, it will be a covered "Occurrence." There will be no coverage when, as in this case, the action is brought against the employee who committed the intentional tort.

*Id.* at 164.

In this case, Plaintiff similarly argues that the Policy is ambiguous because the Policy's summary page lists "Sexual Misconduct" as an "Occurrence," while the Policy also excludes coverage for "Sexual Molestation." Plaintiff contends that "[b]y using Sexual Misconduct in one area of the Policy and then using Sexual Molestation in another area of the Policy, an uncertainty arises that causes the Policy to be ambiguous."

6

Plaintiff's argument fails to recognize that we consider the Policy as a whole to determine whether it is clear and unambiguous. *Todd*, 223 S.W.3d at 163 (citing *In re Estate of Carroll*, 857 S.W.2d 848, 852 (Mo. App. W.D. 1993)). It is clear, when reading the Policy in its entirety, that "Sexual Misconduct" is, in fact, an "Occurrence" in scenarios where the District is held vicariously liable for the actions of its employees, as was the case in *Todd*, but is not an "Occurrence" when an action is brought against the intentional actor. Accordingly, when the Policy listed "Sexual Misconduct" on the summary page, it did not create an ambiguity but rather summarized the coverage provided under the Policy. As stated in *Todd*, "the use of definitions and exclusions is not necessarily contradictory or inconsistent." *Id.* While the Policy's summary page refers broadly to "Sexual Misconduct," it is clear that intentional sexual assault is not covered under the definitions and exclusions. Sexual Molestation cannot be, by its nature, an "Occurrence" under the policy because it is not "an accident." *See Todd*, 223 S.W.3d at 163. Furthermore, Hungerford's actions are clearly excluded under Sections 19(o) and 19(p), specifically Section 19(p) which excludes liability for any person "who knowingly committed . . . Sexual Molestation." Through the definitions and exclusions, MUSIC has limited its liability in that the Policy does provide coverage for the District's vicarious liability for the acts of its employees, but does not cover an individual's liability for "Sexual Molestation."[3]

## Conclusion

Given the foregoing, we conclude that the language of the Policy is unambiguous, and, therefore, the Policy must be enforced as written. *Todd*, 223 S.W.3d at 160. Because Hungerford's sexual molestation of Plaintiff was intentional, it was not an "Occurrence" under the terms of the Policy. Furthermore, Hungerford's actions were explicitly excluded from coverage. Therefore, the

---

[3] Because our conclusion that Hungerford's actions were not an "Occurrence" under the Policy is dispositive, we need not consider whether Hungerford was a "Covered Person." We also decline to address Respondent's public policy argument.

7

trial court did not err in granting MUSIC's motion for summary judgment, and the judgment of the trial court is affirmed.

_____
Philip M. Hess, Presiding Judge

Gary M. Gaertner, Jr., J. and
Angela T. Quigless, J. concur.

8